GERSHNER *v.* STATE.

Opinion delivered February 3, 1913.

1. GAMING—EXHIBITION OF GAMING DEVICE.—One who shows a table especially prepared for the game of "craps," for the purpose of attracting bettors, and who retains a certain per cent of the bets for the benefit of the person who ran the gaming house, is guilty of exhibiting a gaming device under section 1732 of Kirby's Digest. (Page 490.)

2. GAMING—EXHIBITING GAMING DEVICE.—A jury may properly infer that defendant is interested in exhibiting a gaming table when it appears that defendant owned the house and that the table had been exhibited there for some time; that fines were regularly paid on the same, and that defendant once gave orders concerning the closing up of the gaming house. (Page 490.)

3. MISDEMEANOR—ACCESSORY.—It is not error for the trial court, in instructing a jury in a prosecution for exhibiting a gaming device to read section 1560 of Kirby's Digest, which defines who is an accessory to a crime, but told the jury that there are no accessories in misdemeanors, and that any one guilty at all is a principal. (Page 491.)

Appeal from Pulaski Circuit Court, First Division; *R. J. Lea,* Judge; affirmed.

*Bradshaw, Rhoton & Helm,* for appellant.

*William L. Moose,* Attorney-General, and *Jno. P. Streepey,* Assistant, for appellee.

HART, J. A. Gershner was convicted of setting up and exhibiting a gaming device, under section 1732, Kirby's Digest. The facts are substantially as follows:

The defendant, Gershner, operated a saloon in Argenta, facing on Washington avenue. His son, Morris, was a bar tender in the saloon. Back of the saloon are other buildings. All of them are owned by the defendant. Just back of the saloon is a restaurant. Then back of it, next to the alley, but facing on Pine street, is a building owned by the defendant, which is operated as a gambling house. There was a crap table in it. It was a long table, being about eighteen or twenty feet in length, and about four feet wide, covered with a green cloth. It has side boards on the ends and sides which were there to keep the dice from rolling off the table. Two men ran the crap game. One was called the dealer and the other the rack-man. The rack-man took out a percentage of each bet that was made and placed the money in a tin box. The money was kept by the men who operated the game. It was the custom of the prosecuting attorney to file an information about once a month against the man who run the gambling house. Fines were paid by him regularly. Sometime they were paid in the saloon and sometimes they were paid at other places. The testimony does not show that the defendant ever paid any of the fines, but it does show that on one occasion when the constable was looking for the man who ran the game to collect a fine that the defendant said to him, ''The negro is making nothing,'' and remarked that too many fines were being placed on the negro.

Another witness testified that he was in the gambling house one day and the defendant came in and told the persons running the game to clean up.

It is first insisted that a gaming table within the meaning of section 1732 was not exhibited, but we can not agree with counsel in their contention. The testimony shows that the table was especially prepared for the game and that the table and game were exhibited to attract betters. A certain per cent was retained by the exhibitor for the person who ran the gaming house. This was sufficient under our decisions to show that a gambling table was exhibited and to bring the exhibitors within

the denunciation of the statute. In discussing section 1732, Kirby's Digest, in the case of *Johnson* v. *State*, 101 Ark. 159, the Court said:

"But in all such cases the owner of the device or apparatus or instrumentality is interested in the game by reason of the price or percentage which he receives; and it is by virtue of such interest that he violates this section of the statute when exhibiting any device, apparatus or instrumentality by which money or property is won and lost through chance or skill, or both combined. Whether the keeper has a fund himself, which he puts up, or whether the players themselves put up the fund that is gambled for, the keeper or exhibitor of the device is interested in the game if, for the use of his device by which the game is played, he receives a price or pay. The instrumentality or structure which is furnished, by which the game is played, is not material. Any instrumentality by means of which the chance or skill, or both combined, are developed may constitute a gambling device. The gambling device may consist of dice and the throwing thereof. If the instrumentality is adapted and designed for the purpose of playing a game of chance for money or property, and is so used, then it constitutes such a device which comes within the prohibition of this section of the statute against gaming."

It is next insisted that the evidence does not show that the defendant was interested in exhibiting the gaming table. It will be noted that the defendant was the owner of the house and that the gaming table in question had been exhibited there for some time, and fines regularly paid by the exhibitor. Sometimes the fines were paid in the saloon of the defendant, and the testimony shows that people would sometimes go from the saloon to the gaming house. On one occasion when the constable was looking for the negro who ran the gambling house for the purpose of collecting a fine the defendant remarked that they were fining the negro too often and complained that the negro was not making anything. One witness testified that he saw the defendant enter the

gambling house one day and order the persons running it to clean up.

From these facts and circumstances the jury might have inferred he was interested in exhibiting the gaming table.

Finally it is contended by counsel for defendant that the court erred in reading section 1560 Kirby's Digest, in its instructions to the jury. The section is as follows:

"An accessory is he who stands by, aids, abets or assists, or who, not being present aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime."

In this connection the court told the jury that in misdemeanors there are no accessories and that all persons concerned, if guilty at all, are principals, and for this reason the defendant had been indicted as a principal. There was no error in the instruction. See *Hubbard* v. *State*, 10 Ark. 378; *Crocker* v. *State*, 49 Ark. 60.

The judgment will be affirmed.