## CENTRAL STATES THEATRE CORPORATION v. PATZ et al.
### No. 4563.

District Court, S. D. Iowa, Central Division.
May 10, 1935.

Joseph Brody and L. A. Parker (of Brammer, Brody, Charlton & Parker), both of Des Moines, Iowa, for Central States Theatre Corporation.

James A. Treanor, Regional Litigation Atty., National Recovery Administration, E. G. Moon, U. S. Dist. Atty., of Des Moines, Iowa, and C. I. Level, Asst. U. S. Atty., of Denison, Iowa, for defendants.

DEWEY, District Judge.

On March 22, 1935, a bill in equity was filed in the above-entitled cause asking for a restraining order, a temporary injunction, and a permanent injunction against the defendants from interfering with a certain plan being operated by the

plaintiff corporation in the conduct of its motion picture business. A restraining order was issued and the matter set down for hearing on the application for the temporary injunction. By agreement of parties, the hearing was had on the temporary injunction application beginning April 11, 1935, and evidence was submitted, the parties rested, and the matter argued and submitted to the court.

Plaintiff alleges, among other things, for the purpose of increasing interest in its theaters, for advertising and securing additional attendance, plaintiff is operating and conducting what is known as bank night under a contract with Affiliated Enterprises, Inc.; that said contract was entered into on the 1st day of December, 1934, and has been in effect since said time and by its terms continues until January 9, 1936; that said contract provides that plaintiff may conduct an entertainment one night for each week of the entire term of said contract to be known as bank night, for which plaintiff pays the Affiliated Enterprises, Inc., a fixed sum per week during the entire term of the contract.

That said plan consists of and is conducted as follows: "Plaintiff keeps and maintains in the lobby in front of said theatres, and open to the public, a registration book in which any individual may register his or her name, and consecutive numbers are assigned to said names as they are so registered; that on one night of each week at the close of the first performance of that night at approximately 9 o'clock P. M. plaintiff causes to be drawn a number at random from a box containing all of the numbers of said registrants and the registrant whose number is the same as that drawn at said time and place is entitled to, and does receive, the sum of $150.00 or more from the plaintiff; that the only condition attached to such drawing and to the payment of said sum is that the registrant, whose number is so drawn, shall be in or immediately outside of the theatre when such number is drawn and shall immediately present himself to the plaintiff and claim said number, and no registrant is required as a condition, either to the registering or to receiving said sum upon the drawing of his or her number to be inside said theatre, or to have purchased a ticket of admission thereto, or to have paid any sum or given anything of value whatsoever for the privilege of so registering or receiving said sum if and in the event his or her number is drawn at the place and time aforesaid."

The defendants admit that bank night is conducted substantially in the manner as above set forth, and allege, among other things, that "the plaintiff does not come into court with clean hands, because it is conducting a lottery in violation of the laws of the State of Iowa," and because "it is engaged in an enterprise which is contrary to public policy."

The defendants also allege that on or about January 11, 1934, the plaintiff agreed with the Code Authority for the Motion Picture Industry that it would conduct its business of exhibiting motion pictures in conformity with the terms of the Code of Fair Competition for the said industry, and that the conduct of the plaintiff in running bank night constitutes a violation of said code and subjects the plaintiff to the remedies provided therefor under the code and under the terms of the contract.

A great portion of the facts in the case are stipulated, and these stipulated facts are by the court adopted as its findings of fact in this hearing.

Oral testimony was also introduced and it is uncontradicted. As bearing upon the above issues, Mr. Weinburg, vice president of the plaintiff corporation, testified that during the last three years the net average per annum returns to the plaintiff's theaters at Fort Dodge, Iowa, or those involved in this controversy, was about $8,000; that bank night was started as an advertising scheme for said theaters about March 15, 1935, and it has resulted in a net profit of about $225 a week; that during the four weeks in which bank night has been in operation the drawings have been held on the stage, but on none of these occasions has the holder of any ticket been present and no sums have been paid out by the plaintiff corporation; that the advertisement provides that $150 will be paid at the drawing from the stage each bank night, but that the advertisement provides that, in order for a participant to collect, he must be present and claim the amount within 2½ minutes after the drawing; that a registration book is open in the foyer or lobby of the theater; and that the tickets that are placed in the container, from which the drawing is had each week, aggregates all the tickets for the entire period and not for those given out on the night of the bank night alone. Only one number is drawn each week.

■ Mr. Weinburg also testified that they tried to pick out what in their opinion is an outstanding picture for bank night, but on that night only one feature picture is shown and the entertainment is but two hours in length, while on the other nights during the week two feature pictures are shown and the entertainment lasts two and one-half hours.

From this situation the court finds that the increased attendance indicated by the increase in the net profits from bank night is occasioned solely by the scheme.

■ It seems to me that under this situation the plaintiff corporation is conducting a lottery. The elements necessary to constitute a lottery are: First, a prize; second, a chance; and third, a consideration. The plaintiff corporation admits the first two elements are present, but denies that there is any consideration paid by any one on the prize itself. I am unable to agree with this. While the registration book may be open to the public generally, it is within the foyer of the theater, and very few people would be presumptuous enough to enter the theater, register, and not buy a ticket for the entertainment. The very purpose of the registration book being within the foyer of the theater is to induce people to enter the theater. Also that part of the scheme which permits a person to participate in the result of the drawing, if any, by not being inside of the theater, but on the outside, is a subterfuge, as the drawing is at 9 o'clock at night and the percentage of people who would stand outside and wait for the drawing at that time must be comparatively few.

■ The question whether or not there is a paid consideration for the opportunity to win a prize necessary to constitute a lottery is a question of fact which must be determined from the facts and reasonable deductions and inferences to be drawn therefrom in each case. There can be no question that if a person wants to give a prize in appreciation of patronage, he should have the right to do so.

In this case there was an admission charge to the theater, and the question of fact, it seems to me, is whether or not from this admission charge the scheme and plan was to deduct a certain percentage and use this fractional fee to pay or offset the loss which might be occasioned by the $150 prize. If that was the intention, I can see no reason why it would not be a lottery. Here there was a carefully planned scheme to appeal to the cupidity of the public and the spirit of gambling and speculation, carrying with it the attendant detrimental results which were intended to be prohibited by the statutes making gambling and lottery offenses, and at least the scheme is unfair and contrary to public policy.

■ Taking it by its four corners, which the plaintiff insists the court should do in determining the issues of the case, it is very apparent that the increase in the attendance is from those persons who are interested in the drawing and not in the picture, and that they have paid their entrance fee primarily in the hope of being successful on the wheel of fortune. It may be that this number is small in comparison to the whole, but, if it is a lottery as to a few, or a lottery comparatively small in its consideration, it is a lottery nevertheless.

■ However, it is not necessary for defendants to prove that the plaintiff corporation is violating the criminal laws of the state or nation to prevent its obtaining equitable relief. The rule is quite different, and provides that he who comes into equity must do equity and come into court with clean hands. In the vernacular of the present times, before a person should charge another with a wrongdoing, he should first place his own house in order.

■ I quite agree with Judge Symes, who lately considered the same situation, General Theatres, Inc. v. Metro-Goldwyn-Mayer Distributing Corp. (D. C.) 9 F. Supp. 546, that the scheme, as above outlined, while it may be subject to a difference of opinion as to whether it constitutes a lottery, yet it is so apparently a scheme to induce people to go to the theater on an appeal to their hope of gain, and the small chance that they have of recovering under the sheme, and the misleading advertisements, present a picture which appeals to a chancellor as not warranting relief in a court of equity.

For these reasons, I am clearly of the opinion that the plaintiff is not entitled to maintain this suit, and the temporary injunction should be denied. The clerk will therefore enter the following order:

The above-entitled cause having come on for hearing in open court on the 11th and 12th days of April, 1935, on an application for a temporary injunction, evidence is introduced, arguments had, and being advised,

The application for the issuance of a temporary injunction is denied, and the restraining order now in force is terminated, on the ground that the advertising scheme which the plaintiff would like to have protected borders on a lottery and does not warrant protection by a court of equity. To all of which the plaintiff excepts.