STATE OF IOWA, Appellee, v. G. P. HUNDLING, Appellant.

No. 43219.

JANUARY 21, 1936.

J. R. McManus, amicus curiæ.

M. R. Hammer, Jr., and S. P. Halpern, for appellant.

Edward L. O'Connor, Attorney General, and P. J. Siegers, County Attorney, for appellee.

POWERS, J.—The defendant, who was manager and part owner of a motion picture theater at Newton, was convicted of advertising a scheme for a lottery known as "bank night", in violation of the provisions of section 13218, Code 1931. The advertising consisted of the distribution of handbills announcing that a prize of $50 would be given away at the theater on the following Thursday night to the person whose name was drawn if claimed within two and one-half minutes. It advised that the drawing would be from names appearing in a registration book kept by the theater for that purpose and in which every one was invited to register without charge, and that but one name would be drawn, and that if the person did not appear within two and one-half minutes, $25 would be added by the theater to the fund and that a drawing would take place for the enlarged fund on the following Thursday night. It urged

people to register and thus have their names among those from which the winner of the prize would be drawn. In addition to these handbills, there were banners displayed at the theater on which the words "bank night" were written. The scheme thus advertised was carried out at the theater in a manner consistent with the advertising. The evidence shows that the defendant, as manager of the moving picture theater, maintained a registration book in the lobby of the theater, another in a drug store in the town, and others at various places in the town of Newton. People generally were invited to register their names in one of these books. They were not required to pay anything to register in the books, and no consideration of any kind was required as a condition to registration. Each person registered was assigned a number. On the night the prize was to be given away, all these numbers were put in a receptacle and one number drawn out. When the number was thus drawn, by reference to the registration books, the person's name was obtained. It was then announced from the stage of the theater and also at the front door of the theater. It was further announced at the front door of the theater that if the person whose name was announced was outside the theater, such person would be permitted to enter to obtain the prize without the payment of any admission fee.

The question in the case is whether the scheme thus shown was a lottery, the advertising of which would be a violation of section 13218 of the Code.

Our statute prohibiting the advertising of a lottery makes no attempt to define a "lottery". To arrive at a proper definition, we must look to the generally accepted meaning of the term as defined by the authorities, and if there be conflict among the authorities as to the proper definition, we must adopt the definition which includes as an element the evil which the statute was obviously intended to prevent.

The giving away of property or prizes is not unlawful, nor is the gift made unlawful by the fact that the recipient is determined by lot. Our statute provides that the recipient of a public office may be determined by lot in certain cases where there is a tie vote. Section 883, Code 1931. To constitute a lottery there must be a further element, and that is payment of a valuable consideration for the chance to receive the prize. Thus, it is quite generally recognized that there are three elements necessary to constitute a lottery: First, a prize to be given;

second, upon a contingency to be determined by chance; and, third, to a person who has paid some valuable consideration or hazarded something of value for the chance. Bishop, in his work on Statutory Crime, defines a "lottery" thus:

"A lottery is any scheme where one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value, or nothing, as some formula of chance may determine."

38 C. J. p. 286, defines a "lottery" as follows:

"A species of gambling which may be defined as a scheme for the distribution of prizes or things of value by lot or chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize; or as a game of hazard in which small sums of money are ventured for the chance of obtaining a larger value, in money or other articles."

This is the generally accepted meaning of the term, especially when used in criminal statutes. 17 R. C. L. 1222; Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338, 7 L. R. A. 599, 16 Am. St. Rep. 38; Cross v. People, 18 Colo. 321, 32 P. 821, 36 Am. St. Rep. 292; People v. Cardas, 137 Cal. App. (Supp.) 788, 28 P. (2d) 99; R. J. Williams Furniture Co. v. McComb Chamber of Commerce, 147 Miss. 649, 112 So. 579, 57 A. L. R. 421; People v. Mail & Express Co., 179 N. Y. S. 640; Id., 192 App. Div. 903, 182 N. Y. S. 943.

Even in the federal cases, applying a federal statute regulating the use of the mails, where the language of the statute is much more sweeping and refers to lotteries, gift enterprises, and all similar schemes, substantially the same definition has been adopted. Post Publishing Co. v. Murray (C. C. A.) 230 F. 773. The cases in this court, so far as they deal with the exact question, are in harmony with this definition. See Brenard Mfg. Co. v. Jessup & Barrett Co., 186 Iowa 872, 173 N. W. 101; Chancy Park Land Co. v. Hart, 104 Iowa 592, 73 N. W. 1059.

The term "lottery", as popularly and generally used, refers to a gambling scheme in which chances are sold or disposed of for value and the sums thus paid are hazarded in the hope of winning a much larger sum. That is the predominant characteristic of lotteries which has become known to history and is the source of the evil which attends a lottery, in that it arouses the

gambling spirit and leads people to hazard their substance on a mere chance. It is undoubtedly the evil against which our statute is directed. The provisions of the statute making it a crime to have possession of lottery tickets with intent to sell or dispose of them indicates not only what is regarded as characteristic of a lottery, but it indicates the particular incident of a lottery which is regarded as an evil. To have a lottery, therefore, he who has the chance to win the prize must pay, or agree to pay, something of value for that chance.

In the particular scheme under consideration here, there is no question but what two elements of a lottery are present, first, a prize, and, second, a determination of the recipient by lot. Difficulty arises in the third element, namely, the payment of some valuable consideration for the chance by the holder thereof. The holder of the chance to win the prize in the case at bar was required to do two things in order to be eligible to receive the prize, first, sign his name in the book, and, second, be in such proximity to the theater as that he could claim the prize within two and one-half minutes after his name was announced. He was not required to purchase a ticket of admission to the theater either as a condition to signing the registration book or claiming the prize when his name was drawn. In other words, paying admission to the theater added nothing to the chance. Where then is the payment by the holder of the chance of a valuable consideration for the chance, which is necessary in order to make the scheme a lottery?

It is urged on behalf of the state that the defendant theater manager gained some benefit, or hoped to gain some benefit, from the scheme in the way of increased attendance at his theater, and that this would afford the consideration required. If it be conceded that the attendance at the theater on the particular night that the prize was to be given away was stimulated by reason of the scheme, it is difficult to see how that would make the scheme a lottery. The question is not whether the donor of the prize makes a profit in some remote and indirect way, but, rather, whether those who have a chance at the prize pay anything of value for that chance. Every scheme of advertising, including the giving away of premiums and prizes, naturally has for its object, not purely a philanthropic purpose, but increased business. Even the corner grocer who gives candy to the children of the neighborhood may be prompted by that motive, but that

does not make the gift unlawful. And if the grocer, instead of giving candy to all the children, gives it only to some as determined by lot, that circumstance does not make the gift unlawful. And in neither event is the gift made unlawful by the further circumstance that the business of the grocer in the neighborhood may be thereby increased. Profit accruing remotely and indirectly to the person who gives the prize is not a substitute for the requirement that he who has the chance to win the prize must pay a valuable consideration therefor, in order to make the scheme a lottery.

It is further urged that attendance in the neighborhood of the theater on the part of those who have the chance is a sufficient consideration. The argument is that by their presence in front of the theater, or about the theater, on "bank night," they served to attract attention to the theater and made it appear to be a popular place, and made it easier for the theater management to attract customers to the entertainment, and that the service thus rendered was of value to the donor of the prize, and that consideration for the chance was thus furnished. For authority, the state is forced to rely at this point on the single case of Maughs v. Porter, 157 Va. 415, 161 S. E. 242. In that case a person holding a public auction sale of city lots advertised that an automobile would be given away to some person among those attending the sale to be determined by chance. The plaintiff in that action attended the sale and won the automobile. It was not delivered, however, and the action was brought to compel its delivery. The court held that the attendance at the auction was a sufficient consideration to support the contract but that the conract was unenforceable because the scheme was a lottery. The case is not readily distinguishable on principle from the case at bar. It is unique, however, not only in the manner in which it arose and the issues tendered, but in the fact that it appears to be the only case dealing with the subject of lottery which holds that attendance at a place by the holder of a chance is sufficient consideration to make the scheme a lottery. It has been severely criticized. University of Pa. Law Rev., vol. 80, p. 744; Virginia Law Rev., vol. 18, p. 465. It denominates as a "lottery" a scheme which lacks the one element which is the source of all the evil connected with a lottery. It is without support among text-writers or court decisions. It cites no authority which sustains it. On the contrary, as pointed out by the Virginia Law

Review, supra, "the authorities cited in its decision seem to contradict rather than support it." Under such circumstances, it hardly affords a safe guide to follow, especially in the interpretation of a statute creating a crime where the rule of strict construction must be applied.

In the case of People v. Cardas, 137 Cal. App. (Supp.) 788, 28 P. (2d) 99, the California court applies the test properly. It there considered a scheme almost identical in its essential characteristics with the case at bar. The prize was a ticket for a round trip to Catalina Island. It was awarded by lot among persons who held tickets which had been distributed without charge to people generally in the community. The winner was permitted to enter the theater without the payment of admission in order to receive the prize, as in the case at bar. The court held that since the holder of the chance acquired it as a gift and without the payment of any valuable consideration, the scheme was not a lottery; that unless the holder of the chance hazards something of value for the chance, the scheme is not a lottery. The case is sustained by reason and authority. It is in harmony with the recognized definitions of a lottery, previously set out herein, and the supporting citations. Being present at the place where the prize is given, and where it costs nothing to be, cannot be said to be the payment of a valuable consideration, and this is so even though the donor of the prize may receive some remote and indirect benefit from such presence.

The motion of the defendant for a directed verdict of not guilty should have been sustained on the ground that the facts shown were not sufficient to enable the jury to find that the scheme was a lottery, the advertising of which would be a crime under the provisions of section 13218, Code 1931. The judgment below is reversed.—Reversed.

DONEGAN, C. J., and MITCHELL, ANDERSON, PARSONS, and HAMILTON, JJ., concur.