## Essex County Court of Special Sessions.

### STATE OF NEW JERSEY, PLAINTIFF, v. WALTER HORN, DEFENDANT.

**Decided April 25, 1938.**

For the state, *Joseph E. Conlon,* first assistant prosecutor of the Pleas.

For the defendant, *Milton Unger.*

BRENNAN, C. P. J. This defendant is before the court on an allegation in two counts, the first of which is that the defendant on the 23d day of March, 1937, did promise to pay a certain sum of money, to wit.: $50, upon the event and contingency dependent on the drawing of a ticket, the second of which is that the defendant on the 23d day of March, 1937, did promise to pay a certain sum of money, to wit.: $50, upon the event and contingency dependent on the drawing of a number in a lottery. The allegation is based on a statute concerning lotteries, in the following language:

"Any person who shall give, barter, sell, or otherwise dispose of, or offer to give, barter, sell or otherwise dispose of, any ticket or tickets in any lottery, whether erected, set up, opened or made in this state or elsewhere, or the chance or chances of any such ticket or tickets; or who shall issue any policy of insurance, or insure or receive any consideration for insuring for or against the drawing of any ticket or tickets, number or numbers, or any share or interest in any ticket or tickets, in any lottery, or shall receive any money, goods or thing in action, in consideration of any agreement to repay

any sum or sums of money, or to deliver any goods or thing in action, if any ticket or tickets, or any share of any ticket or tickets, in any lottery, shall prove fortunate or unfortunate, or shall be drawn or not drawn on any particular day, or in any particular order, or shall promise or agree to pay any sum of money, or deliver any goods or thing in action, or to do or forbear to do anything for the benefit of any other person or persons, upon any event or contingency dependent on the drawing of any ticket or tickets, or any share of any ticket or tickets, or upon the drawing of any number or numbers *in any lottery* shall be guilty of a misdemeanor." *Pamph. L.* 1898, *p.* 809.

The moot question is whether or not this prolix legislative outgiving interdicts bank night, so called, in the manner and form conducted by the defendant, on the date charged in the allegation, which is March 23d, 1937. The process of bank night is one where by the medium of handbills, signs and trailers, so called, there was advertised that there would be held at a theatre managed by the defendant, a drawing and an award to the fortunate winner. The preliminaries were first, the placement of registration books, so called, in the lobby of the theatre where persons who desired, signed their names and addresses. These books were so placed that they were accessible to passersby as well as to the patrons. A book of similar character was taken by the employes to homes in the community, and persons invited to sign. The persons signing paid nothing, and were obliged to pay nothing for the privilege of signing and participating in the drawing. The handbills were distributed generally in the community, advertising the drawing. After the registration and number was assigned to each registrant and that placed in a drum in the theatre on March 23d, 1937, the drawing was held. The drum containing the numbers was on the stage, and the master of ceremonies read a typewritten statement to the assembled, in the theatre, and those outside. The text of the statement read by this functionary, in substance, was to the effect that it was desired that all persons in the theatre and lobby understand the reasons for making the award. There was as well, the statement that there was no increase in

price on the occasion of bank night; that the purchase of a ticket was not a condition precedent to participation, and the other general rules incident to the drawing. By the rules, the person selected to receive the award, if he did not claim it within five minutes, forfeited the award, and it was carried over to the subsequent week and apparently added to the capital prize for that week. The scheme plainly is a new form of breaking down a sales resistance and designed, of course, to attract a larger number of the movie theatre-going public to the picture offered for display by the theatre. It offers in theory, at least, a dual benefit; the prospective procurement of something for nothing, and the opportunity to follow the romantic fortunes of one's favorite movie hero or heroine. My own experience with the progress of these in pictures which I have had the dubious fortune to see, would impel me to the viewpoint that some sort of bait might be necessary to attract the general public.

While the process of "bank night" may be a cheap and trashy advertising expedient, the legal question to be resolved is whether or not it is a lottery and as such a violation of the statute heretofore referred to. The statute does not define lotteries, but a lottery is "a species of gambling, which may be defined as a scheme for the distribution of prizes or things of value by lot or chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize; or as a game of hazard in which small sums of money are ventured for the chance of obtaining a larger value." *Bishop's Statutory Crimes,* 952; *Bouv. Dict., Rawle's Third Revision.*

The frequent difficulty with statutes general in terms, and of the character of that here for consideration, is that by reason of the loose language and the failure of specific prohibition, the private moral viewpoint of the judge or the court, may become the *lex loci.* The question is one apparently of novel impression in this jurisdiction, but has had serious and elaborate consideration in others, and there is a prevailing contrariety of judicial opinion as to whether or not a scheme substantially like that here for consideration, is a violation of the law. The judicial resolution in each case

apparently turns on the presence of three elements; prize, chance, and consideration. It is apparent that two of those elements are present in the instant case. Is the third?

In the case of *People* v. *Shafer*, 273 *N. Y.* 475; 6 *N. E. Rep.* (*2d*) 410, the Court of Appeals of the State of New York held that a scheme similar to that here the subject of consideration was not a violation of the law where the actual payment of admission to the theare was not a pre-requisite to eligibility. To the same general effect is *State* v. *Crescent Amusement Co.*, 95 *S. W. Rep.* (*2d*) 310; 170 *Tenn.* 351, as well as *People* v. *Cardas*, 28 *Pac. Rep.* (*2d*) 99; 137 *Cal. App.* 788. See, also, *State* v. *Eames*, 183 *Atl. Rep.* 590; 87 *N. H.* 477; *City of Roswell* v. *Jones*, 67 *Pac. Rep.* (*2d*) 286.

Probably the best considered case on the question of whether or not a scheme in all particulars like that here the subject of consideration is a lottery, is *State* v. *Hundling*, 264 *N. W. Rep.* 608; 220 *Iowa* 1369. In that case the court held that such was not a lottery. The court opinion turned upon the proposition that there was absent the element of consideration which took the case out of that class where the three elements of prize, chance and consideration must be present. It was suggested by the court as well, in that case, that criminal statutes such as this, must be strictly construed.

It was elucidated in the Hundling case, *supra*, that because profit might accrue remotely and indirectly to the person or corporation, the element of consideration was not present. It points out with a good deal of clarity, that such was even the case in the event that the corner grocer gave children cakes or candy to increase good will and the potentiality of sale.

There are, of course, cases holding to the contrary, where upon a tenuous legal theory the element of consideration is spelled out, by reason of the conceivable increase in patronage of the theatre upon "bank night" operation. These are *Central States Theatre Corp.* v. *Patz*, 11 *F. Supp.* 566 (*D. C. S. D., Iowa*), in which the court held that the prospect of increased patronage was consideration, and *Iris Amusement Corp.* v. *Kelly*, 8 *N. E. Rep.* (*2d*) 648, as well as *City of Wink* v. *Griffith Amusement Co.*, 100 *S. W. Rep.* (*2d*) 695.

My own viewpoint is that there should be the strict construction indicated in *State* v. *Hundling, supra;* and this because first, criminal statutes should be strictly construed, and secondly and more fundamentally, because there is a problem involved in the construction of our gaming statutes, infinitely more important than the narrow judicial proposition embraced within the four corners of a single issue. This problem is one social in character, and should not be ignored from the standpoint of realism. Our statutes in their essential terminology and application, are such as to create a situation whereby the casual or intermittent offender is brought before the court upon what may be an extremely narrow issue and if the cause is adversely decided as to him, he is branded a criminal for the rest of his life, where there may be all around him violations apparently as obvious, going ignored.

I am not able to look with complacence on a statutory situation or the construction of such, which serves no purpose except to breed disrespect for the law in its apparent inequalities, and promotes no good social purpose looking toward the control of the vice of gaming. It is, I am well aware, a fixed judicial habit where legislation is inadequate, to dismiss such state of affairs with the casual outgiving that that is a matter for legislative and not judicial concern; but that, it seems to me is not enough. The obvious answer is remedial legislation definitely interdicting all those forms of gambling which common experience indicate are anti-social in their character and results, in which case there can be no equivocation about the violation of the statute if the offender comes within the purview of such interdiction and no situation whereby a person heretofore an innocent and valuable member of the community, may be branded with the taint of criminality. My settled viewpoint is that the better legal view is that enunciated in *State* v. *Hundling, supra,* and the one which should be followed in the light of the character of our present legislation on this subject.

I therefore find the defendant not guilty on either count of the allegation.