STATE OF IOWA, appellee, v. WILSON E. MABREY, appellant.

No. 48340.

(Reported in 60 N.W.2d 889)

November 17, 1953.

Rehearing Denied January 15, 1954.

Hess & Peters, of Council Bluffs, for appellant.

Leo A. Hoegh, Attorney General, Earle S. Smith, Assistant Attorney General, and Matt Walsh, of Council Bluffs, County Attorney, for appellee.

GARFIELD, J.—Following trial to the court without a jury defendant was convicted and fined $100 for keeping a gambling house in violation of section 726.1, Code, 1950, which provides, so far as material here: "If any person * * * permit * * * any person in any house, shop, or other place under his control * * * to play at cards, dice, faro, roulette, equality, punchboard, slot machine or other game for money or other thing, such offender shall be fined" etc.

The county attorney's information under which defendant was tried charges he did on March 7, 1953, permit people to play at a game called bingo, for money, in a building under his control, all in violation of section 726.1.

This case is an aftermath of State v. Mabrey, 244 Iowa 415, 56 N.W.2d 888, where we held the same trial court erred in acquitting this defendant of a similar crime previously committed. That opinion sufficiently describes the game of bingo. The principal distinction between the cited case and the present one is that here persons were permitted to play bingo on the evening in question without buying a ticket for dinner at the "recreation club" of which defendant was president and 83

such persons played the game while 263 of those who played purchased a dinner ticket at $2 each.

The former opinion reaches no decision on such facts as now appear since it was there shown without dispute the bingo game was limited to purchasers of dinner tickets. The principal question now before us seems to be whether the fact the bingo game was not confined to purchasers of dinner tickets and nearly a fourth of the participants in the game were not ticket purchasers justifies a different decision than we reached in the former case. We affirm defendant's conviction here notwithstanding the fact participation in the game was not limited to ticket purchasers.

I. Some rulings on evidence are first assigned as error. The rulings appear in the following record from the examination of the sheriff, a witness for the State. (We set out only so much of defendant's objections as are now relied upon):

"Q. Do you know who was conducting the game there that evening?

"Mr. Peters: Objected to as leading and suggestive; no proper foundation; calling for an opinion and conclusion.

"The Court: Overruled.

"A. Yes, I know who was running the game.

"Q. Who was running the game? A. Wilson Mabrey.

"Mr. Peters: Objected to for the reason it calls for an opinion and conclusion; it is irrelevant, immaterial; no proper foundation has been laid.

"The Court: Overruled.

"Mr. Peters: I move to strike the answer on the same grounds, and if the record shows the objections were after the answer, let it show counsel did not have sufficient opportunity to object before the answer was given.

"The Court: Overruled.

"Q. Do you know whether Mr. Mabrey was personally conducting the game, or was it some organization?

"Mr. Peters: Objected to as leading and suggestive and assumes facts not in the record; calls for an opinion and conclusion.

"The Court: Overruled.

"A. It is my understanding the Carter Lake Recreation Club runs the game. The reason I said it was Wilson Mabrey is because he is president of the Carter Lake Recreation Club."

It appears defendant notified the county attorney's office by letter that bingo would be played at the "recreation club" on the evening in question. Apparently defendant was inviting arrest. In any event the sheriff and three of his deputies went to the club that evening to see what transpired. The deputies arrived at 6:30, the sheriff at 7. They stayed until about 9:45. The sheriff had arrested defendant for operating a bingo game at the same place on the occasion referred to in our former opinion (244 Iowa 415, 56 N.W.2d 888) and was a witness upon the trial of that charge.

We find no reversible error in any of the rulings above set out. The first question was not vulnerable to the objection urged against it. It called merely for the witness's knowledge. Further, the answer to the first question was not prejudicial to defendant. There is no merit in the argument the question was leading "for it assumed some person was conducting the game and there was no evidence to support such assumption." It is a matter of common, general knowledge that one or more persons would be conducting the game.

There was no objection to the second question ("Who was running the game?") until after the answer was given. We have frequently held an objection to a question is not timely unless made before answer. Kuiken v. Garrett, 243 Iowa 785, 804, 51 N.W.2d 149, 160, and citations. Of course a witness may answer a question before opposing counsel has opportunity to object. Defendant's motion to strike the answer asserted that was the situation here. Lack of opportunity to object does not otherwise appear, as by a statement from the trial court to that effect. The objection and motion to strike may have been overruled because the court felt they were not timely.

Aside from the above, the only objection defendant urged to the second question quoted above which has any merit is that it calls for an opinion and conclusion. The answer to

that question is perhaps, in a sense, partly an opinion or conclusion. But we think it was not, for that reason, inadmissible. The line between fact and conclusion is not hard and fast. The second question called for what has been called a composite or collective fact learned from observation. The trial court has discretion in the matter of receiving such testimony. No abuse of discretion appears here. See In re Estate of Stratman, 231 Iowa 480, 483, 484, 1 N.W.2d 636, 640; 20 Am. Jur., Evidence, sections 771, 772; 32 C. J. S., Evidence, sections 459, 461.

Other authorities in support of the holding just stated include In re Estate of Conner, 240 Iowa 479, 485, 36 N.W.2d 833, 837; Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 369, 370, 30 N.W.2d 120, 127; Evans v. Upmier, 235 Iowa 35, 48–50, 16 N.W.2d 6, 12, 13; Shaw v. Duro, 234 Iowa 778, 790, 791, 14 N.W.2d 241, 247, and citations; Yahn v. City of Ottumwa, 60 Iowa 429, 432, 15 N.W. 257.

The answer to the third question quoted above was not prejudicial to defendant in view of the entire record. The sheriff said defendant told him he was president of the recreation club and defendant himself testified he was the president. Defendant also said the game was conducted in the dining room of the club. Excerpts from defendant's testimony are: "I served food there on the evening of March 7, 1953. * * * Exhibit 3 is a notice I sent out announcing the opening of the dining room. About 400 notices were sent out. * * * Q. How many cash prizes did you award them that evening? A. Awards were made on 35 games. * * * Bingo, as played in my club, is conducted as follows * * *."

Exhibit 3 is an announcement of the reopening of the club's dining room on March 7, 1953, which says "your favorite entertainment BINGO will be furnished free starting at 8 p.m." The exhibit concludes, "Hope to see you on this date. Wilson E. Mabrey, Pres., Carter Lake Recreation Club, Inc."

There is much evidence from defendant himself to the effect the recreation club of which he was president conducted the bingo game. Thus the third answer of the sheriff, above-quoted, adds little, if anything, to what appears from defendant's own testimony. That the answer was therefore not sufficiently preju-

dicial to warrant reversal see State v. Warren, 242 Iowa 1176, 1181, 47 N.W.2d 221, 224; State v. Boland, 241 Iowa 770, 776, 41 N.W.2d 727, 731; State v. Stafford, 237 Iowa 780, 788, 23 N.W.2d 832, 836; State v. Billberg, 229 Iowa 1208, 1215, 296 N.W. 396, 400; 24 C. J. S., Criminal Law, section 1915c, page 967; 5 C. J. S., Appeal and Error, section 1731a.

■ II. There is no merit to the contention defendant was entitled to what he calls a directed verdict on the ground the State failed to prove the building in which bingo was played was under defendant's control. We have referred to enough evidence of defendant's control of the building to support this allegation of the information. There is other similar testimony (some by defendant himself) from which it may fairly be inferred defendant was in control of the building. Our conclusion at this point finds support in State v. Rand, 238 Iowa 250, 261–263, 25 N.W.2d 800, 806, 807, 170 A. L. R. 289; Meinert v. State, 190 Ind. 682, 131 N.E. 515, 15 A. L. R. 1201, and annotation 1202; State v. Chauvin, 231 Mo. 31, 132 S.W. 243, Ann. Cas. 1912A 992, and note 995; 24 Am. Jur., Gaming and Prize Contests, section 44, page 429.

■■ III. We return now to the principal question presented, stated near the beginning of this opinion. Defendant contends he was entitled to a directed verdict because he says the bingo game was free, anyone could take part in it without being compelled to pay any sum and the case therefore is within the rule of State v. Hundling, 220 Iowa 1369, 264 N.W. 608, 103 A. L. R. 861.

Only brief reference to the facts is necessary. The announcement heretofore referred to (Exhibit 3) of reopening of the club's dining room states bingo will be furnished free and "You Can Play BINGO And Participate In The Prizes WITHOUT Either Paying Any Money, Buying A Dinner Ticket Or Any Other Merchandise." A sign on a cardboard (24 x 44 inches) near the door to the dining room also contained the words just quoted following the words "Free Bingo." Another sign (12 x 44 inches) near the ticket window read: "Smorgasbord style dinners $2. All you can eat. Dinners from 6:30

to 8:30 p.m. Entertainment starts at 8 p.m. Absolutely no minors allowed to participate in prizes."

As stated at the outset, 83 participants in the bingo game on the evening in question purchased no dinner ticket, 263 participants each purchased a ticket. Thirty-five games were played. The club awarded a prize of not less than $5 on each game. On five games the winner received $10. On game No. 20 the award was $20 and on game No. 35 the prize was $25. Prizes totaled $235.

Bingo has frequently been recognized to be virtually the same game as "beano", "keno", "tango", "lotto", and "screeno". We have not attempted to exhaust the list of names—others are sometimes used. Such games have repeatedly been held to be games of chance and lotteries. People v. Welch, 269 Mich. 449, 257 N.W. 859; Society of Good Neighbors v. Van Antwerp, 324 Mich. 22, 36 N.W.2d 308, 309; State ex rel. Trampe v. Multerer, 234 Wis. 50, 289 N.W. 600; 38 C. J. S., Gaming, section 1, page 43; 54 C. J. S., Lotteries, section 10b, page 857; 24 Am. Jur., Gaming and Prize Contests, section 28; annotations 60 A. L. R. 343, 346, 135 A. L. R. 104, 175–180.

Our legislature has declared keno layouts to be gambling devices the possession of which is prohibited. Section 726.5, Code, 1950. Keno layouts are also among the gambling devices for the possession of which a license for carrying on business may be revoked. Section 1, chapter 64, Acts of Fifty-fourth General Assembly.

The public policy of this state toward lotteries is expressed in our state Constitution, Article III, section 28, "No lottery shall be authorized by this State; nor shall the sale of lottery tickets be allowed."

Code section 726.1 (above-quoted) under which defendant was prosecuted makes it a crime for any person to permit another in any house under his control to play a game for money or other thing. All those who took part in the game of bingo here played for money even if the money prizes had been furnished by the club of which defendant was president. The holding would perhaps be warranted there was a violation of section 726.1 regardless of whether participants in the game

paid a price for the chance to win a prize. However, it is unnecessary to place our decision upon such broad ground.

A lottery is a species of gambling. 54 C. J. S., Lotteries, section 1, page 844; 34 Am. Jur., Lotteries, section 2, page 647. Clearly two of the three traditional elements of a lottery were present here. A prize was awarded by chance. Defendant argues there was no lottery because he says the third element was absent—a price paid by the participants for their chance at the prizes. But the trial court was warranted in finding the majority of participants who purchased dinner tickets paid a price for their chance at the prizes—an undisclosed part of the money paid for the tickets. Such a finding seems to be the only sensible and realistic one. It is highly improbable defendant would want to continue his bingo games if ticket sales were not sufficient to pay the prize money.

Under our decision in State v. Mabrey, supra, 244 Iowa 415, 56 N.W.2d 888, the game here was a lottery at least as to those who purchased tickets. It did not cease to be a lottery because some were admitted to play without paying for the privilege, so long as others paid for their chances. Presence of the nonpaying participants did not change the status of those who paid. If it was a lottery as to some who played the game it was nonetheless a lottery.

Unless we close our eyes to reality the conclusion is justified that in actual operation ticket purchasers—perhaps unwittingly—paid for their own chance at prizes and also for the chance of those who were admitted to the game without paying. Thus presence of the nonpaying participants did not change the essential character of the enterprise. Indeed, as several courts have pointed out, opening a lottery to nonpaying participants is, in a sense, all the more objectionable in that it reduces the chance for the prize of those who pay therefor and would seem to be entitled to it.

It must be admitted State v. Hundling, supra, 220 Iowa 1369, 264 N.W. 608, 609, 103 A. L. R. 861, and a few other theater bank night cases that have followed it furnish some support for defendant's argument on the principal question before us. We held Hundling did not violate what is now Code

section 726.8, making it a crime to advertise a lottery, because his bank night drawings were not limited to purchasers of theater tickets. State v. Mabrey, supra, 244 Iowa 415, 422, 56 N.W.2d 888, 892, gives warning we might not follow the Hundling case and points out that the weight of authority holds such a bank night scheme as Hundling conducted is a lottery. After careful consideration we now decline to follow State v. Hundling, supra. Decisions involving bank night and similar schemes are annotated in 48 A. L. R. 1115, 57 A. L. R. 424, 103 A. L. R. 866, 109 A. L. R. 709, 113 A. L. R. 1121.— Affirmed.

All JUSTICES concur.