The Honorable Mike Beebe State Senator 211 W. Arch Searcy, Arkansas 72143
Dear Senator Beebe:
This is in response to your request for an opinion concerning the legality of a proposed bingo operation. Specifically you note that in 1986, Attorney General Steve Clark issued an opinion stating that lotteries are prohibited by the Arkansas Constitution and the Arkansas Criminal Code. See Opinion No.86-599. The opinion noted that if the three elements of a lottery, that is, consideration, chance and a prize are present, a lottery exists. The opinion, you note, also refers with approval to guidelines issued by the Pulaski County Prosecuting Attorney which suggested the requesting but not requiring of donations to play bingo, and that any tickets or advertisements may request donations, but must make clear that donations are not required in order to play.
You note that a constituent of yours has requested information relative to the current status of this law. The proposal is to provide for no-charge to participate in the bingo activity and to request but not require a nominal donation to participate. Any and all advertisements in conjunction with the bingo activity would make it extraordinarily clear that donations are requested but not required. Monetary prizes would be given from the donations.
With these facts in mind, you have asked for an updated opinion reflecting whether the proposed bingo activity would be legal pursuant to Arkansas law.
The Arkansas Constitution, Arkansas statutes, and Arkansas Supreme Court case law on the subject have not changed since the issuance of Attorney General Opinion Number 86-599; but as your question is addressed to my administration, we will undertake an analysis of your question anew.
The question of whether this type of "donation" or "free" bingo is legal in Arkansas has never been addressed by the Arkansas Supreme Court. That court is the only tribunal which can resolve the controversy and confusion surrounding this issue. Although authority across the country is split on the issue, the current weight of authority appears to be that such "donation" type bingo operations are prohibited. However, because there is no Arkansas case law strictly on point, it is impossible to predict exactly how the Arkansas Supreme Court would rule.
Even if we had the benefit of Arkansas case law on point, the resolution of individual cases will depend largely on the particular facts surrounding the bingo activity. For this reason, as the law currently stands, each prosecuting attorney must make a judgment as to the status of the law, and determine whether the facts of individual cases render the activity illegal. Of course, no opinion issued by this office is binding upon the legal judgment of those officers.
The relevant legal provisions are found in the Arkansas Constitution and the Arkansas statutes. Article 19, Section 14 of the Arkansas Constitution provides that:
 No lottery shall be authorized by this State, nor shall the sale of lottery tickets be allowed.
The relevant statutes on gambling are found at A.C.A. § 5-66-101
et seq. That subchapter prohibits, among other things, the keeping of "gambling houses," A.C.A. § 5-66-103, and the keeping or exhibiting of "gambling devices," A.C.A. § 5-66-104, as follows:
 Every person who shall keep, conduct, or operate, or who shall be interested, directly or indirectly, in keeping, conducting, or operating any gambling house or place where gambling is carried on, . . . shall be deemed guilty of a felony. . . .
 Every person who shall set up, keep, or exhibit any gaming table or gambling device, commonly called A.B.C., E.O., roulette, rouge et noir, or any faro bank, or any other gaming table or gambling device or bank of the like or similar kind, or of any description although not herein named, be the name or denomination what it may, adapted devised, or designed for the purpose of playing any game of chance, or at which any money or property may be won or lost, shall be deemed guilty of a misdemeanor. . . .
Two issues must be resolved in order to answer your question as to whether this "donation" type bingo is "legal." Does the contemplated "donation" bingo activity constitute a "lottery" which is therefore prohibited by the constitution? Does the contemplated activity otherwise violate the Arkansas Criminal Code sections cited above? Both questions must be answered because not all forms of gambling are lotteries. The constitution prohibits lotteries. The general assembly may prohibit other types of gambling in addition to lotteries.
Our Supreme Court has never held bingo a "lottery"[1] (see however, Opinion No. 86-545), although it has defined the term "lottery" in several cases as "a species of gaming, which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." Burks v. Harris,91 Ark. 205, 208 (1909). See also, Longstreth v. Cook,215 Ark. 72, 220 S.W.2d 433 (1949); State v. Bass, 224 Ark. 976,277 S.W.2d 479 (1955); Shuffield v. Raney, 226 Ark. 3, 287 S.W.2d 588
(1956); and Scott v. Dunaway, 228 Ark. 943, 311 S.W.2d 305
(1958). One court has held that the "universally accepted view" is that no lottery exists if one of these elements or ingredients is missing. People v. Eagle Food Centers, Inc., 31 Ill.2d 535,202 N.E.2d 473 (1964). See also, Opinion No. 86-599. In this vein, many courts have held that if the element of consideration is missing, there is no lottery. See e.g., People v. Shira,62 Cal. App. 3d 442, 133 Cal. Rptr. 94 (1976); State v. Socony Mobil Oil Company, 386 S.W.2d 169 (Tex.App. 1964); People v. Eagle Food Centers, supra; and California Gasoline Retailers v. Regal Petroleum Corporation of Fresno, Inc., 50 Cal.2d 844,330 P.2d 778 (1958).
Cases across the country are virtually unanimous that bingo, at least where the three elements of chance, a prize, and consideration are present, constitutes a lottery. See, Pruitt, v. State, 557 N.E.2d 684 (Ind. 2d Dist.Ct.App. 1990); Secretary of State v. St. Augustine Church, 766 S.W.2d 499 (Tenn. 1989); Army Navy Bingo, Garrison # 2196 v. Plowden, 281 S.C. 226,314 S.E.2d 339 (1984); State v. Crayton, 344 So.2d 771 (Ala.Civ.App.), cert. denied, 344 So.2d 775 (Ala. 1977); Otto v. Kosofsky,476 S.W.2d 626 (Ky.App. 1972) cert denied, 409 U.S. 912 (1972); State v. Nelson, 210 Kan. 439, 502 P.2d 841, (1972); State v. Safeway Stores, Inc., 75 Wash.2d 339, 450 P.2d 949 (1969); State v. Mabrey, 245 Iowa 428, 60 N.W.2d 889 (1953); State v. Multerer,234 Wis. 50, 289 N.W. 600 (1940); Society of Good Neighbors v. Van Antwerp, 324 Mich. 22, 36 N.W.2d 308 (1949); St. John's Melkite Catholic Church v. Commissioner of Revenue, 240 Ga. 733,242 S.E.2d 108 (1978). See contra, however, Knight v. Moore,574 So.2d 662 (Miss. 1990), (holding that charitable bingo in Mississippi was not a "lottery" within the constitutional prohibition because: 1) bingo had not been invented at the time of the prohibition, and thus it could not have intended to prohibit it, 2) the popular meaning of the term "lottery" does not include bingo, and 3) the legislature had enacted a statute construing the term "lottery" as not including bingo, and this construction was entitled to considerable weight.
Cases and opinions are far from unanimous, however, on whether bingo conducted on a strictly "donation" basis constitutes a prohibited lottery. Some courts have held that even if only some of the patrons make donations, the activity is a lottery at least as to those who purchased tickets. "It did not cease to be a lottery because some were admitted to play without paying for the privilege, so long as others paid for their chances." State v. Mabrey, 245 Iowa 428, 60 N.W.2d 889, 893 (1953). In another case, an Ohio court struck down guidelines set by a city manager which suggested that any charitable bingo revenues be raised through membership fees or donations. Nadlin v. Starick, 24 O.O.2d 272, 194 N.E.2d 81 (1963). The court described the city manager's suggestion as a "ruse, a rather shallow trick, of no legal significance, that calling cash a donation or a membership defeats the consideration for the game." 194 N.E.2d at 86. The court also stated that:
 To avoid a gamble, participation must be purely gratuitous with no direct or indirect consideration, condition, entrance fee, membership fee, or gift to entitle one to be eligible for a prize. . . . It is conceivable that bingo may be conducted for entertainment purposes if there is no consideration given or in the alternative there is no prize. However restriction by way of membership, fees, donations, or other form of subterfuge for a consideration must be scrutinized carefully by the court.
194 N.E.2d at 86.
Attorney General opinions from other states have also addressed the issue. As recently as 1989, the Attorney General of Tennessee opined that even if only some of the patrons make voluntary donations to play bingo, it is still a lottery and therefore prohibited. See Tennessee Opinion of the Attorney General No. 89-105. This opinion stated that "[t]he undeniable fact was that payments from participants funded the distribution of prizes. Likewise the mere labeling of participants' payments as `voluntary donations' does not alter this reality and therefore cannot save these variations." See also, 60 Ops. Cal. Atty. Gen. 130 and 64 Ops. Cal. Atty. Gen. 114.
The Attorney General of South Carolina, however, opined in 1974 as follows:
 The applicable law thus appears to be that when there is truly free participation no lottery is present. The better reasoned cases apparently hold that if the participant has an opportunity to participate free, without the requirement that he purchase something or pay the consideration the lottery statute is not violated. The fact that the participant does not avail himself of the opportunity to participate free is of no consequence. [Citation omitted.] The law is adamant however that a scheme which seeks to evade the terms of this statute is unlawful, so that an operation which was in fact not a lottery could become one through over-persuasive requests for donations, or ruses whereby participants were required to pay an admission fee in order to gain entrance into the facility.
Cases and opinions from other jurisdictions are thus split on the question. If our Supreme Court were faced with the question, in my opinion, it could reasonably decide the issue either way. It could decide that bingo played only upon the request for voluntary donations, if truly voluntary and not coercive in any manner, does not contain the requisite element of consideration and the activity is not prohibited as a lottery. It could also, however, conclude that the requesting of donations and the giving, at least in some cases, of donations, is a subterfuge to evade the purposes of the law, and thus the activity is prohibited by the Arkansas Constitution. Predicting what our court would hold on the issue would involve a substantial measure of conjecture. The only definitive way to resolve the issue is to have it decided by the Arkansas Supreme Court.
It appears from the authorities cited above, however, that the majority of cases or decisions addressing the issue have concluded that "donation" bingo is at least suspect under state constitutional provisions. See also, Note, Criminal Law — Lotteries — Consideration Necessary to Constitute, 10 Ark.L.Rev. 223 (1955-56).
The question of whether the proposed activity violates the Arkansas statutes is a distinct, but similar question, which has a similar result. The two statutes set out earlier prohibit the keeping of "gambling" houses, and the keeping or exhibiting of "gambling" devices. "Gambling" is not defined in the statutes. It has been defined by the Arkansas Supreme Court as "the risking of money, between two or more persons, on a contest or chance of any kind, where one must be the loser and the other gainer." Portis v. State, 27 Ark. 360, 362 (1872). This definition contains an element of consideration just as does the definition of a lottery. Thus the question of whether "donation" bingo is gambling depends again on whether this element of consideration is deemed present. We have not found any Arkansas cases construing the Arkansas "gambling" statutes which address this issue. Many of the cases focus on whether the defendant was actually the exhibitor and retained a percentage of the proceeds so as to violate the statute. See e.g., State v. Sanders,86 Ark. 353 (1908); Tully v. State, 88 Ark. 411 (1908); Johnson v. State,101 Ark. 159 (1911); and Gershner v. State, 106 Ark. 488 (1913). See contra, Sorrentino v. State, 214 Ark. 115 (1948). Other cases discuss just what type of "devices" are or can be "gambling devices." See Euper v. State, 35 Ark. 629 (1880), and Albright v. Muncrief, 206 Ark. 319, 176 S.W.2d 426 (1943).
Again, the question appears to be an open one and is subject to construction by the Arkansas Supreme Court.
Because of the uncertain nature of the law, prosecuting attorneys are charged with the responsibility of interpreting the statutes, investigating the facts of individual cases, and determining whether prosecution is warranted. Until the Supreme Court is properly presented with the question, and some guidance is given in the form of a Supreme Court decision, these officers will have to make the type of decision your constituent seeks.
The Attorney General is required under A.C.A. § 25-16-706 to provide his opinion to the General Assembly upon the constitutionality of any proposed bill. He is precluded, however, from engaging in the private practice of law. A.C.A. § 25-16-701. Therefore, this opinion is not provided for the benefit of private third parties and should not be relied upon nor offered for that purpose.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:arb
[1] In fact, in Portis v. State, 27 Ark. 360 (1872), the Arkansas Supreme Court held that the similar game of "keno" was not a lottery. It did hold that it was "gambling" prohibited by the statutes, but it concluded that a "lottery" is "`the distribution of prizes by chance.' The prizes have an existence before tickets are sold; but in `keno,' each player puts up his fifty cents to make an aggregate sum, which is the amount played for." 27 Ark. at 363. This distinction may be blurred today, as in common parlance the term "lottery" is used to refer to an activity where individuals play for the sum accumulated by the price of the "tickets." Additionally, this case was decided prior to the adoption of the current Arkansas Constitution.