J. M. EDWARDS et al., Appellees, v. W. S. FOLEY, Appellant.

CONTRACTS: Rescission—Fraudulent Representations — Sufficiency of Evidence. Evidence reviewed, in an action to cancel an executory land exchange contract, and *held* that the plaintiff had exchanged property of the fair value of $26,500 for $1,500 and land in Canada represented to be of the value of $25,000, but worth not to exceed $12,300, and that the defendants had exaggerated the value of their land, the acreage susceptible to cultivation, the supply of well water, the amount of land actually under the plow, and the quality in productiveness of the soil, and that such misrepresentations, together with the inadequate consideration, sufficiently established fraud so as to entitle him to a cancellation of the contract.

VENDOR AND PURCHASER: Rescission—Fraudulent Representations—Unequal Opportunity to Know Property. The rule that, where the means of knowledge as to the character and quality of property sold are equally open and available to both parties, and the property is open to inspection to both, the buyer will not be permitted to rescind on the plea that he was misled by the seller's representations, is not applicable where the sale was negotiated at a place far removed from the land, and plaintiff had no acquaintance with it, except such as might be acquired by the casual glance of one on a single occasion of passing that way before he became a prospective buyer, and the defendants had owned it for several years, and had lived upon it for at least a year, and were in a position to know its merits and demerits intimately.

FRAUD: Effect of and Relief Against—Misrepresentations as to Land. That plaintiff relied upon misrepresentations of the defendants as to land which was being exchanged, in preference to statements of a third person who told him of some of the

alleged defects in the land, would permit the defendants to escape the results of their deceit.

**PRINCIPAL AND AGENT:** Authority of Agent—Fraudulent Representations—Acceptance of Benefits. In an action to cancel a contract for exchange of lands for misrepresentations made by the father of the defendant, some of which were made in the presence of the son by the father, who was assuming to act for the defendant, the defendant cannot have the benefit of the contract without adopting as his own the acts done and representations made by the father in procuring the contract.

*Appeal from Audubon District Court.*—SHELBY CULLISON, Judge.

SEPTEMBER 22, 1919.

ACTION in equity to rescind and cancel an executory contract for the exchange of Iowa farm land owned by the plaintiff for other land owned by the defendants, or one of them, in Saskatchewan, Canada. There was a decree for the plaintiffs, as prayed, and defendant appeals.—*Affirmed.*

*B. A. Goodspeed, H. M. Boorman,* and *J. M. Graham,* for appellant.

*J. H. Ross* and *Cosson & Francis,* for appellees.

WEAVER, J.—The plaintiff J. M. Edwards is a farmer, and, at the time of the transaction in question, he owned a farm of 160 acres in Audubon County. The defendants, Michael Foley and W. S. Foley, were father and son, residing in the same county, and were acquaintances of the plaintiffs'. At some time prior to this date, J. M. Edwards had acquired title to a small tract of irrigated land in Utah, which property he exchanged for a half section of land in Saskatchewan. Plaintiff was unacquainted with the property so obtained, and took it without personal inspection or knowledge of its quality; but, at a later date, when visiting a member of his family in Montana, he took ad-

vantage of the occasion to prolong his journey and visit Canada, to look at his land.

Some years prior to this date, W. S. Foley had also become the owner of a section of land in the neighborhood of the tract which plaintiff had acquired, as above stated. Plaintiff appears to have known that Foley owned land in that vicinity, and to have looked at it, in passing, while on his visit to that locality; but it is not shown that he then had any thought of acquiring the property for himself, or that he went upon or examined it, or that he inspected it with a view to its acquirement. The date of this visit to Canada was July, 1916. Some time during the succeeding fall, the matter of the exchange of plaintiff's Iowa farm for the Foley section in Canada became the subject of talk between the parties, the negotiations on the part of W. S. Foley being principally conducted by his father, Michael F. Foley. A written contract was finally executed, under date of October 27, 1916. By its terms, the plaintiff was to convey to W. S. Foley his quarter section farm already mentioned, together with a house and lot in the town of Audubon, at the aggregate price of $26,500, to be paid, $100 in cash on the signing of the contract, and $1,400 on March 1, 1917, when the remainder, of $25,000, was to be satisfied by conveyance to plaintiff of the Canada land. Defendants paid plaintiff the installment of $100; but otherwise, the agreement for the exchange remains wholly unperformed.

Within a short time after the contract was made, and before the first of the following March, plaintiff, claiming to have been deceived by the defendants' representations as to the condition, quality, and value of the land, notified defendants of his election to rescind the contract, and tendered repayment of the $100 installment which he had received. Efforts at a compromise and settlement of the dif-

ferences so arising between the parties having failed, this
action was begun.

I. The fact issues are not unlike those with which
courts have so frequently to deal in litigation over sales
and exchanges of land, and especially in those cases where
the property, or some of it, is situated at
a considerable distance from the place of
contract, and the complaining party asserts
that he was deceived or misled with refer-
ence to its character and value. *Rohr v.
Shaffer,* 178 Iowa 943; *Dickinson v. Stevenson,* 142 Iowa
567, 570; *Riley v. Bell,* 120 Iowa 618; *Sutton v. Greiner,*
177 Iowa 532; *Hetland v. Bilstad,* 140 Iowa 411, 420; *Scott
v. Burnight,* 131 Iowa 507, 509; *Franke v. Kelsheimer,* 180
Iowa 251; *Hood v. Smith,* 79 Iowa 621, 622; *Boddy v.
Conover,* 126 Iowa 31, 40; *Shuttlefield v. Neil,* 163 Iowa
470, 472. The trial court made no specific findings of fact,
but held generally that plaintiffs had made a case entitling
them to the relief asked. This conclusion is sustainable if
we find *de novo* that the weight of the evidence fairly tends
to show that defendants made untrue statements of fact as
to the character and value of the Canada land, for the pur-
pose of inducing the exchange of properties, and that plain-
tiffs entered into the contract believing and relying there-
on. As is usual in cases of this character, there is a con-
flict of testimony concerning many of the items of com-
plaint made by the plaintiffs; but, taking the record in its
entirety, we are satisfied that the decree appealed from
effects substantial equity between the litigants.

Without reciting the evidence, we have to say that it
satisfactorily appears that, at the date of the contract,
plaintiff's farm was of the fair value of $25,000, and his
house and lot of the value of $1,500. On the other hand,
we are equally well satisfied that defendant's section of
land in Canada, which was put into the exchange at $25,-

1. CONTRACTS: re-
scission: fraud-
ulent repre-
sentations: suffi-
ciency of evi-
dence.

000, was fairly worth not to exceed $20 per acre, or $12,800. Now, while we have frequently said that the court will not undertake to make contracts for parties, nor to relieve either party from his agreement, simply because he finds he has made a bad bargain, yet, if the inadequacy of consideration be so marked or so gross as in itself to impress the impartial mind with the conviction that a fraud was perpetrated, or if the degree of inadequacy be not so gross, but is yet so great as to emphasize the effect or significance of other proved inequitable circumstances or badges of fraud, it lends support to the conclusion that an undue advantage was obtained over the plaintiffs. 2 Pomeroy's Equity (3rd Ed.) Section 927; *Rarick v. Womer,* 184 Iowa 1016. In our judgment, such is the effect of the evidence. There is no apparent reason why the plaintiffs should enter into this deal if they were not convinced or did not believe that the property they were taking from Foley was of a value substantially equal to the value of the farm they were putting into the exchange. Indeed, it seems very certain that, had they known or understood the true situation, and that they were thereby sacrificing half the value of the farm which constituted the bulk of their earthly possessions, they would have unhesitatingly refused to enter into the contract. If they were self-deceived, and defendants did nothing to contribute to their deception, then, of course, the court would not interfere to save them from the consequences of their folly; but we are led to the conclusion that defendants cannot thus wash their hands of responsibility. The plaintiffs' evidence tends to show that defendants, in negotiating the trade, exaggerated the value of the land, the acreage of land susceptible to cultivation, the supply of good well water, the amount of land actually under the plow, and the quality and productiveness of the soil, and other desirable features. Some of these alleged representations are denied, and the truth of

others is asserted by the defendants, but we find ourselves in accord with the trial court in its conclusions as to the truth of plaintiffs' claims.

II. Counsel for appellants lay principal stress in argument upon the fact that the plaintiff J. M. Edwards admits that, before the contract was made, he had, on one occasion, visited the neighborhood of the Canada land, and had seen it, as above stated, though he denies having been upon the premises, or that he examined or inspected it. From this incident it is sought to invoke for appellants the benefit of the rule that, where the means of knowledge as to the character and quality of property sold are equally open and available to both parties, and it is alike open to the inspection of both, the buyer will not be permitted to recant his purchase on the plea that he was misled by the seller's representations. But this case does not fall within that rule. The sale was negotiated at a place far removed from the land. The defendant, W. S. Foley, had owned it for several years, and had lived upon it for at least a year, and was in a position to know its merits and demerits, intimately. Plaintiff had no acquaintance with it, except such as might be acquired by the casual glance of one who, on a single occasion, passed that way, and glanced across the premises from without. This was before he became a prospective buyer, and there appears to be no reason for saying he was bound to give the land any closer inspection, or that, having failed so to do, he may not rely upon Foley's representations concerning it. The parties did not stand on equal footing with respect to their knowledge of the land or opportunity to know the truth as to its quality or value.

Much reliance is also manifested in the further fact that, before the trade was made, a third person is said to have told plaintiffs of some of the alleged defects in the

*2. VENDOR AND PURCHASER: rescission: fraudulent representations: unequal opportunity to know property.*

property; but, even if this be true, we think
3. FRAUD: effect  there is no sound principle of law which
of and relief
against : misrep-  will permit defendants to escape the re-
resentations as
to land.          sult of their deceit because plaintiffs relied
upon their word in preference to that of
another.

III.   Although the Canada land was owned by W. S.
Foley, the negotiations for its exchange with plaintiffs were,
to a considerable degree, carried on by his father, M. T.
Foley; and the point is made that there is
4. PRINCIPAL AND  no showing of the authority of the latter
AGENT: author-
ity of agent:     to represent his son, who is, therefore, not
fraudulent rep-
resentations:     bound by the statements or representations
acceptance of
benefits.         of his father.   The record discloses very
clearly that M. T. Foley did act in the prem-
ises, and that the son not only knew that fact, but was
present on some of the occasions when his father assumed
to act and speak for him.   There can be no doubt that the
elder Foley took an active and efficient part in bringing
about the agreement, and the son cannot have the benefit of
an agreement so procured without adopting as his own the
acts done and representations made by the father in pro-
curing it. There is no merit in appellant's contention on
this score.

The record discloses no sufficient reason for disturbing
the decree entered by the trial court, and it is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.