RALPH B. SLIPPY ENGINEERING CORPORATION, Appellant, v. CITY OF GRINNELL, Appellee.

No. 44767.

June 20, 1939.

Kildee & Kildee and Pike, Sias, Zimmerman & Butler, for appellant.

J. G. Shifflett and Thomas J. Bray, for appellee.

Miller, J.—This is the second appeal to this court herein. For the opinion on the first appeal, see Slippy Eng. Corp. v. City of Grinnell, 224 Iowa 212, 276 N. W. 58.

The first appeal was from the ruling of the district court sustaining a demurrer to counts I and II of the plaintiff's petition. This court reversed the decision and remanded the case for trial on its merits. Such a trial was had, resulting in a directed verdict in favor of the defendant, City of Grinnell, on certain claims embodied in counts I and II of the plaintiff's petition, and in favor of the plaintiff on the claims remaining in count I, and on the claims set forth in count III of the petition. The plaintiff alone appeals to this court.

Numerous pleadings have been filed. As they are reviewed in our former decision, we do not undertake to again review them here. Suffice it to say that the action is for compensation for engineering services claimed to have been furnished the City of Grinnell in connection with the construction of certain additions to the city's sewage disposal plant. In count I of appel-

lant's petition, appellant claims a balance of $1,747.55 due for services rendered between the dates of May 5th and November 30, 1927. In count II, appellant claims a balance of $3,453.20 for services rendered between December 1, 1927 and December 18, 1928. The claims set forth in count III are not material here for the reason that the trial court directed a verdict in favor of appellant, and the city has not appealed from the judgment entered pursuant thereto.

The facts involved herein are unique in some respects, but appear to be established without substantial dispute.

On May 10, 1926, the city council adopted a motion to "hire an engineer to draw plans and specifications for the enlargement of the tank and sludge bed at the disposal plant and the installment of a trickling filter with an estimate of the cost."

On May 25, 1926, appellant made a written proposal to the city council to do such engineering work, which proposal contained three alternate propositions for compensation. One proposition was that its compensation be 7 or 8 per cent of the cost of the improvement. Another proposition was that its compensation be figured on an hourly and per diem basis, payments to be made monthly. The third proposition was on a lump sum basis, as follows:

"Lump Sum Basis

"Completion and delivery of plans and specifications ....................................$1,000.00

"Awarding of Contract, or if this is not done within 90 days after delivery of the plans, payment becomes due ................................ 300.00

"Monthly payments of $300.00 per month during construction. Balance upon completion and acceptance of the construction work to a total for the construction work of..................... 2,000.00

"Total ................... ....................$3,300.00"

On the same day, to wit: May 25, 1926, the city council adopted a motion to "hire the Ralph B. Slippy Engineering Corporation to reconstruct the sewage disposal plant according to his proposal for the sum of $3,300.00 for the engineering work."

Appellant prepared plans and specifications and on Sep-

tember 20, 1926, the council instructed the clerk to advertise for bids for the construction of the improvement. On October 18, 1926, all bids were rejected. On November 1, 1926, the city clerk was again instructed to advertise for bids to be opened on November 23, 1926, on which date all bids were again rejected.

In the meantime, on September 6, 1926, appellant was paid $1,000 on its contract, and on December 20, 1926, was paid an additional $300 on its contract.

Nothing further was done about the sewage disposal plant until April 27, 1927, on which date the council passed a motion that "the city adopt a trickling filter system for the sewage disposal plant and hire an engineer to investigate and make recommendations."

Pursuant thereto, the city clerk wrote several letters to various engineers, one of the letters dated April 28, 1927, being addressed to Mr. Slippy, of appellant corporation, which advised him that the city had voted to adopt a sprinkling filter system and to secure an engineer to investigate and recommend general plans with an estimate as to cost. The letter continued as follows:

"The council does not wish to have prospective engineers take their time, but if you are interested, you may visit Grinnell, look over the outlet ground, and after investigation put in a bid for engineering on certain general plans, either a flat price or on a percentage basis. These figures with a general plan should be filed with the City Clerk by Monday, May 16th."

In response to this letter from the city clerk, the appellant, on April 30, 1927, wrote a letter to the city council, stating in part as follows:

"Gentlemen. We are in receipt of a letter from Mr. Lowrey which purports to be an invitation to bid on the engineering work for your new disposal plant. Frankly, under the circumstances, we do not understand the letter. Our proposal for the work which you accepted last year was for the entire engineering work on your disposal plant. We have had no intimation that you desire to dispense with our services, as we thought that we still enjoyed your confidence. We consider our contract still in effect. If you desire to employ some other engineers, we will accept to balance of $2,000.00 on our contract and release you,

altho we would much rather go ahead with you and build the plant ourselves."

On May 16, 1927, there was a meeting of the city council "to consider the matter of receiving propositions from engineering companies on the construction of a sewage disposal plant." Various engineers were in attendance, including Mr. Slippy, of appellant corporation. Proposals were read from other engineering firms not in attendance. The record does not show what took place other than that the meeting adjourned without any definite action having been taken. On the following day, at a meeting of the city council, a motion was made that "the city reject Mr. Slippy's plans for the construction of a disposal plant." This motion lost. A motion was then made that "Mr. Slippy be instructed to change the specifications of the present plans for the sewage disposal plant as the council may suggest and prepare to re-advertise for bids." This motion carried.

Thereafter, the plans and specifications were changed by the appellant, whereby the improvement could be constructed at a substantial reduction in cost. The general effect of the change in the plans and specifications is described by Mr. Slippy, testifying as a witness, as follows:

"The first set of plans contemplated the use of the Imhoff tank as a sludge digestion chamber and new storing tanks. The second set of plans contemplated the use of the old Imhoff tank as a storing tank and the construction of new sludge tanks."

On July 5, 1927, the new plans and specifications were approved by the council and the clerk instructed to give notice of intention to enter into a contract for the improvement, and to advertise for bids. The notice given required that objections would be heard on July 18, 1927. On that day, the city council met and determined that no objections were presented. Thereafter, on July 22, 1927, the bids, filed pursuant to the notice given therefor, were opened and a contract was awarded to one A. Emmert.

Mr. Emmert undertook to construct the project, and the appellant undertook the necessary engineering supervision thereof. In September of 1927, appellant demanded of appellee and was paid $300 on its contract. Similar payments were demanded and paid in October, November and December 1927.

Thereafter, the payments demanded by appellant were at the rate of $100 per month and were paid by the city until a total of $3,200 had been paid on appellant's contract.

The present action was commenced in November 1933. In the original petition, which was filed on November 13, 1933, in Count I thereof, appellant alleged that the engineering services rendered by it were of the value of $3,300, on which $3,200 had been paid, leaving a balance of $100. In count II, appellant alleged that, at the special instance and request of the appellee, it had performed, in the nature of extraordinary services, certain work, labor and services amounting to $3,194.50, payment for which was demanded in addition to the balance due on the contract. Count III of the original petition sets forth substantially the same claims for which the trial court directed a verdict in favor of appellant at the trial herein. After the filing of the original petition, various and sundry amendments were filed, which are reviewed by this court in the opinion filed on the first appeal herein. After reviewing such pleadings, this court, in that opinion, states [224 Iowa 216, 276 N. W. 60]:

"We might further add that a casual reading of the synopsis of the pleadings appearing herein makes it unnecessary to say to the profession that it is not proposed as a model of pleading, but to give an idea of the difficulties which confronted the trial court and now confront us in determining what the real contention of the plaintiff has been."

After careful study of the pleadings and appellant's brief and argument, it appears that what appellant now claims in counts I and II is that, under the contract made on May 25, 1926, appellant prepared certain plans and specifications, and was paid the sum of $1,300 therefor; that, thereafter, in April 1927, the original contract was abandoned, and on May 17, 1927, a new contract was made whereby appellant was re-employed to do the engineering work for the sewage disposal plant without any determination being made as to the compensation for such services; that the services rendered in 1926 were paid for in accordance with the first contract, and, that contract being at an end, appellant is entitled to recover, under a new contract, for services rendered in 1927 and 1928, on a quantum meruit basis..

Appellee's answer raises a number of defenses, some

of which we need not discuss here. Appellee's principal contention, with which the trial court agreed, was that the motion, adopted by the city council on May 17, 1927, that "Mr. Slippy be instructed to change the specifications of the present plans for the sewage disposal plant as the city council may suggest and prepare to re-advertise for bids", did not constitute an abandonment of the original contract, particularly in view of appellant's letter of April 30, 1927, hereinbefore quoted, and that the most that could be claimed for such motion would be an authorization to do extra work in addition to that contemplated by the original contract.

We are disposed to agree with the trial court, that appellee's interpretation is sound and that appellant's contentions are not well taken.

It is the theory of the appellant that "it is very clear from the action of the parties" that in 1927 they entered into a contract which was intended to replace the first; that the parties recognized that appellant had been fully paid for all services rendered under the first contract, and that, under the new contract, the compensation to be paid appellant was undetermined and, therefore, should be the reasonable value of such services. We hold that the action of the parties is not subject to such interpretation.

In considering the action of the parties, we must look at the picture as a whole. Were we to consider only the motion adopted by the city council on April 27, 1927, and the letter which the clerk wrote to Mr. Slippy under date of April 28, 1927, there might be some basis for appellant's contention. The action by appellee at that time indicated a disposition to consider the original contract with appellant at an end. However, on April 30, 1927, appellant wrote appellee, "We consider our contract still in effect." As for compensation for the services rendered under that contract, appellant did not contend that it had been fully paid, but demanded an additional sum of $2,000 for a release from such contract. This demand was based upon the assertion that, "Our proposal for the work which you accepted last year was for the entire engineering work on your disposal plant." Obviously, appellant did not consider the contract at an end, nor did it consider that it had been fully paid under such contract.

Following receipt of the letter of April 30, 1927, a meet-

ing was had which was attended by Mr. Slippy, of appellant corporation. Other engineers were present. Proposals from engineering firms not in attendance were read. As above pointed out, the record does not show what took place, except that no definite action was taken by appellee. Thereafter, on the next day, a motion to reject the plans prepared by Mr. Slippy lost, and a motion that he be instructed to change the specifications of the present plans and prepare to re-advertise for bids carried.

This evidence is the evidence in the record from which to determine the intention of the parties. As we view it, appellant's emphatic position was that the original contract was not at an end, but still in effect. Appellant did not change such position until after litigation had resulted. The evidence, in regard to the action of appellee, in our opinion, is subject to but one interpretation, namely, that appellee acceded to the position insisted upon by appellant, namely, that appellant's contract was still in effect, and that appellant should be afforded the opportunity to perform the contract. The contract was for engineering services for the entire project. Appellant so insisted, even when it knew that appellee intended to modify the nature of the project. The compensation to be paid appellant under its contract was on a lump sum basis. As stated by appellant, this covered "the entire engineering work on the disposal plant". Appellant's original petition, above referred to, appears to have been prepared upon the theory that the original contract was still in force and effect, and that the only extra compensation over and above that provided for in the contract that could be claimed was for extraordinary services outside the contemplation of the contract, performed at the special instance and request of appellee. This original interpretation of the record which appellant made, in its original petition, was the only sound interpretation to be made of the facts herein. The theories now advanced by appellant appear to be an afterthought. The claim now asserted, that the parties abandoned the original contract and made a new contract in 1927, is not supported by the record. The record is exactly the reverse. The trial court properly so held.

Appellant made two offers of proof to show the value of the services rendered by it, consisting of inspection and supervision of construction of the disposal plant. One offer of

proof covered the period from July 24 to November 30, 1927. The other covered the period from December 1, 1927, to December 18, 1928. Appellee objected to the offers of proof on the grounds that the evidence was immaterial, because the services were within the contemplation of the contract, and, accordingly, appellant was limited to the compensation provided therefor in the contract. The trial court sustained appellee's objections, in accordance with the position it had taken on the question, what was the contract between the parties. As above pointed out, we agree with the trial court's interpretation of the contract. We also agree with the ruling made by the trial court on the offer to prove the value of the services which were within the contemplation of the contract.

The claims of appellant which were included in count II of its petition embraced the period from December 1, 1927, to December 18, 1928. Appellee moved for a directed verdict as to count II because the record contained no evidence to support the claims included in such count. The motion was sustained. In view of the ruling on the offer of proof, the motion was well grounded and, since the ruling on the offer was correct, there was no error as to count II.

The claim for services rendered during the period from July 24 to November 30, 1927, constituted a part of the claims included in count I of the petition. For the reasons set forth in regard to count II, the action of the trial court as to this phase of count I was proper.

There was also included, in count I of the petition, a claim for services rendered between May 5 and July 23, 1927, consisting of preparing plans and specifications for the disposal plant. The trial court permitted evidence to be introduced as to the value of these services, on the theory that the motion, adopted by the city council on May 17, 1927, instructing Mr. Slippy to change the specifications of the plans for the disposal plant, might be considered an authorization to do extra work in addition to that contemplated by the original contract.

In appellee's answer and in its motion for directed verdict as to count I, appellee asserted three defenses to such claim: (1) that the drawing of the revised plans and specifications came within the contemplation of the services to be rendered in the contract and, accordingly, appellant was not entitled to recover extra compensation therefor; (2) that appellant had waived

any claim for extra compensation for such services; (3) that the claim for extra compensation for such services was based upon an oral contract and was barred by the statute of limitations because not incorporated in the pleadings until more than five years after such services had been rendered.

The evidence, upon which appellee relied as supporting such defenses to this feature of count I of the petition, is essentially as follows:

The action of appellee, at the meeting of the council on April 27, 1927, and in writing appellant as it did on the following day, was sufficient to advise appellant that changes in the plans and specifications were contemplated. Appellant's letter of April 30, 1927, contained the assertion that appellant alone had the right to prepare such plans and specifications, because its contract with appellee was still in effect and was for the entire engineering work on the disposal plant. This position was taken by appellant without any indication on its part that it would expect extra compensation for services rendered in revising the plans and specifications. When it was authorized to change the plans, it undertook to do so without any indication that extra compensation would be claimed therefor.

Mr. Slippy, as a witness, testified to the filing of claims for engineering services at the rate of $300 per month during the latter part of 1927, and admitted that at no time was any claim filed with the city for extra compensation for the preparation of additional or revised plans and specifications. The city clerk testified that at no time did appellant file with the city a claim for additional compensation for the preparation of plans and specifications. Mr. Slippy further testified that, when the original petition was filed in 1933, and a claim was made for alleged extraordinary services, not within the contemplation of the contract, the extraordinary services then asserted did not include any claim for extra compensation because of the preparation of the revised plans and specifications. The claim, now made for extra compensation for the preparation of plans and specifications, was not asserted until more than five years had transpired. Because of the confused state of the pleadings, it is difficult for us to determine just when the claim, for extra compensation for preparation of plans and specifications, was first incorporated in the petition. As near as we can determine, it

was some time in 1935, approximately eight years after such services were rendered by appellant.

The trial court, in sustaining appellee's motion for a directed verdict as to this feature of count I of the petition, indicated that he considered that the services were rendered pursuant to an oral contract for services not within the contemplation of the original contract and that the statute of limitations had run against such claim before it was incorporated in the pleadings. However, the court sustained the motion generally.

Appellant, in its assignment of error, contends that a new contract was made in 1927, that it superseded the original contract; that, because the minutes of the meeting of the city council were in writing, the new contract should be considered a written contract; that the statute of limitations in reference thereto is ten years, and, therefore, had not run at the time this claim was incorporated in the petition. Appellant makes no assignment of error in reference to the defense of waiver, notwithstanding that this defense was pleaded in the answer, was incorporated in the motion for directed verdict, and the motion was sustained generally by the trial court.

We are of the opinion that the claim of waiver merited more consideration than appellant has seen fit to give it. This is a law action, tried to a jury. The jurisdiction of this court herein is confined to that of a court for the correction of errors. To invoke its jurisdiction, a proper assignment of error is necessary.

In the case of Peoples Trust & Savings Bank v. Smith, 212 Iowa 124, 126, 236 N.W. 30, 31, this court was asked to pass upon the ruling of the trial court, which sustained a motion for a directed verdict that had been predicated on three grounds and was sustained generally. In that case, as here, the appellant did not undertake to challenge all three grounds of the motion. In that opinion, we state:

"Conceding, for the sake of the argument alone and without so deciding, that this error relied upon for reversal presents anything for our consideration, we ascertain from appellants' amendment to their abstract that the motion for a directed verdict was predicated upon three separate counts and was sustained generally. It is elementary that it was incumbent upon the

appellants to establish that the motion for a directed verdict was not good upon any ground thereof before error can be predicated upon the sustaining of said motion.''

The above statement is controlling here. Pursuant thereto, appellant's attempted assignment of error in reference to the ruling of the trial court on the claim for extra compensation for the preparation of revised plans and specifications, presents nothing for our consideration, because the ground of the motion, based on the defense of waiver, is in no way challenged.

The decision of the trial court, sustaining appellee's motion for a directed verdict as to counts I and II of the petition, disposed of all claims embodied therein. However, in view of the fact that the contract between the parties, as determined by the trial court, provided for $3,300, and the evidence showed that appellant had only received $3,200 on the contract, the court, on its own motion, directed a verdict on count I in favor of appellant in the sum of $100 with interest thereon in the amount of $53.18. Appellee has not challenged this ruling of the trial court; nor has it appealed from the action of the trial court in directing a verdict on its own motion in favor of appellant on claims embodied in count III of the petition.

In view of the fact that we find no error on the part of the trial court in reference to those matters which have been properly presented to us for our consideration, the judgment must be and it is affirmed.—Affirmed.

MITCHELL, C. J., and OLIVER, STIGER, HAMILTON, BLISS, HALE, and RICHARDS, JJ., concur.