MRS. RUTH ST. PETER, Appellant, v. PIONEER THEATRE CORPORATION et al., Appellees.

No. 45100.

April 2, 1940.

Hird & Cudahy, for appellant.

Howard & Bolte, for appellees.

MILLER, J.—This controversy involves a drawing at a theatre under an arrangement designated at "bank night", not

identical with, but substantially similar to the arrangement involved in the controversy heretofore presented to this court by the case of State v. Hundling, 220 Iowa 1369, 264 N. W. 608, 103 A. L. R. 861. In that case, we held that the arrangement was not a lottery in violation of the provisions of section 13218 of the Code 1931, and that the proprietor of the theatre was not subject to criminal prosecution. In this case, we are confronted with the question whether the arrangement is such that one, to whom the prize is awarded, has a cause of action to enforce the payment thereof.

Plaintiff's petition alleges that the Pioneer Theatre Corporation operates a theatre at Jefferson, Iowa, known as the Iowa Theatre, and that the defendant Parkinson was at all times material herein manager of such theatre. The bank night drawing by defendants was conducted on Wednesday evening, at about 9 p. m. On December 21, 1938, the prize or purse was advertised by defendants in the amount of $275. At about 9 p. m., plaintiff and her husband were outside the theatre when an agent of the defendants announced that plaintiff's name had been called. Plaintiff immediately went into the theatre and made demand upon the manager, who refused to pay her the prize or purse, although plaintiff made demand therefor within the 3 minutes allowed by defendants. Plaintiff demanded judgment for the $275 and costs.

In count II of the plaintiff's petition, plaintiff alleged that her husband's name was drawn, he presented himself within 3 minutes, demanded the $275 and payment was refused, if he was not within the allotted time it was due to acts of defendants, her husband assigned his claim to plaintiff and plaintiff demanded judgment as such assignee.

Defendants' answer admitted that the Pioneer Theatre Corporation is operating the Iowa Theatre at Jefferson, Iowa, and that the defendant Parkinson is and has been for more than 5 years manager of said Iowa Theatre for the corporate defendant. The answer denied all other allegations of both counts of the petition.

The only witnesses to testify at the trial were the plaintiff and her husband. Their testimony is not in conflict. Accordingly, no disputed question of fact is presented, only questions of law.

They testified that each had signed the bank night register, plaintiff's number was 6396, her husband's number 212. The husband signed the register at the express invitation and request of Parkinson. Plaintiff signed the register later at the theatre in the presence of an usher. Plaintiff attended every bank night, often accompanied by her husband. Sometimes they attended as patrons of the theatre. Other times they stood on the sidewalk outside. On the occasions when they remained on the sidewalk outside the theatre, one Alice Kafer habitually announced the name that had been drawn inside the theatre. The only other person seen by them to make such announcement was Parkinson.

On the evening of December 21, 1938, plaintiff and her husband were on the sidewalk in front of the theatre. They observed a sign reading "Bank Night $275". About 9:00 o'clock Alice Kafer came out and said to plaintiff:

"Hurry up Mrs. St. Peter, your name is called."

Plaintiff entered the theatre and called to Parkinson. He came back and said:

"I am sorry, but it was your husband's name that was called, where is your husband?"

She said: "He is right behind me," turned around and motioned to him and said: "Its your name that was called."

As he started toward them, the lights went out and in the darkness they lost track of Parkinson. They sent an usher to look for him. When Parkinson came out and approached them he said to plaintiff's husband:

"You are too late, just one second too late."

Mr. St. Peter said: "You have a pretty good watch."

Parkinson replied: "One second is just as good as a week."

Mr. St. Peter said: "Why don't you call the name outside like you do inside?"

Parkinson replied: "I have a lady hired to call the name out." When asked who she was, he said: "Its none of your business." When told that Mr. St. Peter intended to see a lawyer, Parkinson stated: "That is what we want you to do; the law is backing us up on our side."

Plaintiff and her husband then left the theatre. Plaintiff's

husband testified that he assigned his claim to the plaintiff before the action was commenced.

At the close of plaintiff's evidence, which consisted solely of her testimony, that of her husband, and defendants' bank night register, defendants made a motion for a directed verdict on seven grounds, to wit: (1) there was no adequate or legal consideration for the claimed promise to give the alleged purse, (2) there was no evidence that Alice Kafer was employed by or in any manner authorized by defendants to announce the winner of the drawing, and defendants were not bound by her statements, (3) the most that could be claimed for plaintiff's alleged cause of action was a mere executory agreement to make a gift upon the happening of certain events without legal or adequate consideration, and no recovery could be had, (4) if a verdict were returned for plaintiff under the evidence offered, it would be the duty of the court to set the same aside, (5) there was no evidence that either plaintiff or her husband claimed the purse within the time limit fixed by defendants, (6) there was no relevant, competent or material proof that the name of either plaintiff or her husband was drawn, (7) if there is any legal or sufficient consideration for the promise sought to be enforced, then such consideration would constitute the transaction a lottery and, therefore, an illegal transaction upon which no recovery could be had.

The court sustained the motion generally. A verdict for the defendants was returned accordingly and judgment was entered dismissing the action at plaintiff's costs. Plaintiff appeals, assigning as error the sustaining of the motion and the entry of judgment pursuant thereto.

I. Since the motion was sustained generally, it is incumbent upon appellant, before she would be entitled to a reversal at our hands, to establish that the motion was not good upon any ground thereof. People's Trust & Savings Bank v. Smith, 212 Iowa 124, 126, 236 N. W. 30, 31; Slippy Eng. Corp. v. City of Grinnell, 226 Iowa 1293, 286 N. W. 508, 513. Realizing such burden, and undertaking to discharge the same, appellant has made seven assignments of error, each attacking a similarly numbered paragraph of the motion for directed verdict.

II. Appellant's assignments of error Nos. 1, 3 and 7, attacking paragraphs 1, 3 and 7 of the motion for directed verdict, are definitely related to each other, and will be con-

sidered together. In such consideration, we are faced at the outset with our decision in the case of State v. Hundling, 220 Iowa 1369, 264 N. W. 608, 103 A. L. R. 861, heretofore referred to, wherein we held that an arrangement such as is involved herein does not constitute a lottery, and that the proprietor of the theatre is not subject to criminal prosecution on account thereof. In defining a lottery, we state at page 1370 of 220 Iowa, at page 609 of 264 N. W., 103 A. L. R. 861, as follows:

"The giving away of property or prizes is not unlawful, nor is the gift made unlawful by the fact that the recipient is determined by lot. Our statute provides that the recipient of a public office may be determined by lot in certain cases where there is a tie vote. Section 883, Code 1931. To constitute a lottery there must be a further element, and that is payment of a valuable consideration for the chance to receive the prize. Thus, it is quite generally recognized that there are three elements necessary to constitute a lottery: First, a prize to be given; second, upon a contingency to be determined by chance; and, third, to a person who has paid some valuable consideration or hazarded something of value for the chance."

In applying such definition to the facts presented in that case, we state at page 1371 of 220 Iowa, at page 609 of 264 N. W., 103 A. L. R. 861, as follows:

"The term 'lottery', as popularly and generally used, refers to a gambling scheme in which chances are sold or disposed of for value and the sums thus paid are hazarded in the hope of winning a much larger sum. That is the predominant characteristic of lotteries which has become known to history and is the source of the evil which attends a lottery, in that it arouses the gambling spirit and leads people to hazard their substance on a mere chance. It is undoubtedly the evil against which our statute is directed. The provisions of the statute making it a crime to have possession of lottery tickets with intent to sell or dispose of them indicates not only what is regarded as characteristic of a lottery, but it indicates the particular incident of a lottery which is regarded as an evil. To have a lottery, therefore, he who has the chance to win the prize must pay, or agree to pay, something of value for that chance. "In the particular scheme under consideration here, there

is no question but what two elements of a lottery are present, first, a prize, and, second, a determination of the recipient by lot. Difficulty arises in the third element, namely, the payment of some valuable consideration for the chance by the holder thereof. The holder of the chance to win the prize in the case at bar was required to do two things in order to be eligible to receive the prize, first, sign his name in the book, and, second, be in such proximity to the theater as that he could claim the prize within two and one-half minutes after his name was announced. He was not required to purchase a ticket of admission to the theater either as a condition to signing the registration book or claiming the prize when his name was drawn. In other words, paying admission to the theater added nothing to the chance. Where then is the payment by the holder of the chance of a valuable consideration for the chance, which is necessary in order to make the scheme a lottery?''

In holding that there was not such a valuable consideration as would constitute the arrangement a lottery, we state at page 1372 of 220 Iowa, at page 610 of 264 N. W., 103 A. L. R. 861, as follows:

''It is urged on behalf of the state that the defendant theater manager gained some benefit, or hoped to gain some benefit, from the scheme in the way of increased attendance at his theater, and that this would afford the consideration required. If it be conceded that the attendance at the theater on the particular night that the prize was to be given away was stimulated by reason of the scheme, it is difficult to see how that would make the scheme a lottery. The question is not whether the donor of the prize makes a profit in some remote and indirect way, but, rather, whether those who have a chance at the prize pay anything of value for that chance. Every scheme of advertising, including the giving away of premiums and prizes, naturally has for its object, not purely a philanthropic purpose, but increased business. * * * Profit accruing remotely and indirectly to the person who gives the prize is not a substitute for the requirement that he who has the chance to win the prize must pay a valuable consideration therefor, in order to make the scheme a lottery.''

Appellees rely upon the language above quoted to support their contention that the arrangement involved in both cases con-

stitutes merely an offer to make a gift, which is not supported by a valuable consideration and is, therefore, unenforceable.

In 12 American Jurisprudence, pages 564 and 565, in section 72, it is stated:

"It is well settled, however, that ordinarily consideration is an essential element of a simple contract, and want or lack of consideration is an excuse for nonperformance of a promise."

It is also stated:

"The policy of the courts in requiring a consideration for the maintenance of an action of assumpsit appears to be to prevent the enforcement of gratuitous promises."

Such principles have been recognized by this court. In the case of Farlow v. Farlow, 154 Iowa 647, 135 N. W. 1, we held that a promise to make a gift is without consideration and not enforceable. See, also, Lanfier v. Lanfier, 227 Iowa 258, 288 N. W. 104.

Appellees contend that the foregoing principles, considered with our statements in State v. Hundling, supra, show that this action is based upon a promise that cannot be enforced. In the Hundling case, we state:

"The giving away of property or prizes is not unlawful," and, "profit accruing remotely and indirectly to the person who gives the prize is not a substitute for the requirement that he who has a chance to win the prize must pay a valuable consideration therefor."

Appellees contend that these pronouncements commit us to the proposition that the arrangement involved herein constituted nothing more than a promise to make a gift which is not supported by a legal consideration and, accordingly, is not enforceable. We are unable to agree with the contentions of appellees.

At the outset, it is important to bear in mind that the plaintiff herein seeks to recover on a unilateral contract. A bilateral contract is one in which two promises are made; the promise of each party to the contract is consideration for the promise of the other party. In a unilateral contract, only one party makes a promise. If that promise is made contingent upon the other party doing some act, which he is not under legal obligation to do, or forbearing an action which he has a legal right

to take, then such affirmative act or forbearance constitutes the consideration for and acceptance of the promise.

In discussing the difference between bilateral contracts and unilateral contracts, this court, in the case of Port Huron Mach. Co. v. Wohlers, 207 Iowa 826, 829, 221 N. W. 843, 844, states as follows:

"The law recognizes, as a matter of classification, two kinds of contracts,—unilateral and bilateral. In the case at bar, a typical example of unilateral contract is found, since it is universally agreed that a unilateral contract is one in which no promisor receives a promise as consideration; whereas, in a bilateral contract, there are mutual promises between the two parties to the contract. This matter of definition has recently received careful consideration by the American Law Institute, and may be found in the Restatement of the Law of Contracts, Proposed Final Draft No. 1 (April 18, 1928), [Page] 17, Section 12.

"In the instant case, the offer of the defendant must be viewed as a promise. It is promissory in terms. The rule is well stated by Professor Williston: A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and which does induce such action or forbearance, is binding if injustice can be avoided only by enforcement of the promise. See 1 Williston on Contracts, Section 139. Clearly, the instant offer, signed by the defendant, was of this character. Appellant, however, contends that there was no acceptance of the offer. Words are not the only medium of expression of mutual assent. An offer may invite an acceptance to be made by merely an affirmative answer, or by performing a specific act. True, if an act other than a promise is requested, no contract exists until what is requested is performed or tendered, in whole or in part. We are here dealing with a unilateral contract, and the act requested and performed as consideration for the contract indicates acceptance, as well as furnishes the consideration."

The case of Scott v. People's Monthly Co., 209 Iowa 503, 508, 228 N. W. 263, 265, 67 A. L. R. 413, involved an action for a $1,000 prize offered in a "Word-building Contest". We there state:

"In 34 Cyc. 1731, we find the following apt language:

" 'An offer of or promise to pay a reward is a proposal merely, or a conditional promise, on the part of the offerer, and not a consummated contract. It may be said to be, in effect, the offer of a promise for an act, and the offer becomes a binding contract when the act is done or the service rendered in accordance with the terms of the offer * * *.'

"It is the doing of the act in accordance with the terms and conditions of the offer which completes the contract. 34 Cyc. 1738. In other words, to make a binding and enforcible contract, the act must be done in accordance with the terms and conditions of the offer. 34 Cyc. 1742. See, also, 13 Corpus Juris 275, 279, 281–283, 289; Baker v. Johnson County, 37 Iowa 186; Breen v. Mayne, 141 Iowa 399 [118 N. W. 441]."

The principles applicable to the question of the adequacy of the consideration are clearly and concisely stated by Chief Justice Wright in the early case of Blake v. Blake, 7 Iowa 46, 51, as follows:

"The essence and requisite of every consideration is, that it should create some benefit to the party promising, or some trouble, prejudice, or inconvenience to the party to whom the promise is made. Whenever, therefore, any injury to the one party, or any benefit to the other, springs from a consideration, it is sufficient to support a contract. Each party to a contract may, ordinarily, exercise his own discretion, as to the adequacy of the consideration; and if the agreement be made *bona fide*, it matters not how insignificant the benefit may apparently be to the promisor, or how slight the inconvenience or damage appear to be to the promisee, provided it be susceptible of legal estimation. Story on Contracts, section 431. Of course, however, if the inadequacy is so gross as to create a presumption of fraud, the contract founded thereon would not be enforced. But, even then, it is the *fraud* which is thereby indicated, and not the inadequacy of consideration, which invalidates the contract."

The principles announced in the above quotation have been recognized and applied by us in our later decisions. State ex rel. v. American Bonding and Casualty Co., 213 Iowa 200, 206, 238 N. W. 726; Edwards v. Foley, 187 Iowa 5, 9, 173 N. W. 914; Harlan v. Harlan, 102 Iowa 701, 704, 72 N. W. 286.

Applying the principles above reviewed, it is readily appar-

ent that, in this action on a unilateral contract, it was necessary for the plaintiff to show that a promise had been made which might be accepted by the doing of an act, which act would constitute consideration for the promise and performance of the contract. There is no basis for any claim of fraud herein. Plaintiff had nothing to do with inducing the defendants' promise. That promise was voluntarily and deliberately made. Defendants exercised their own discretion in determining the adequacy of the consideration for their promise. If the plaintiff did the acts called for by that promise, defendants cannot complain of the adequacy of the consideration.

Of course, it is fundamental that the act which is asserted as the consideration for, acceptance and performance of a unilateral contract must be an act which the party sought to be bound bargained for, and the acts must have been induced by the promise made. Appellees contend that the facts are wholly insufficient to meet such requirements, contending as follows:

"Although the action of Appellant in writing her name or standing in front of the theater might under some circumstances be such an act as would furnish a consideration for a promise, yet under the facts in the case at bar, * * * no reasonable person could say that the requested acts were actually bargained for in a legal sense so as to give rise to an enforceable promise."

We are unable to concur in the contentions of counsel above quoted. We think that the requested acts were bargained for. We see nothing unreasonable in such holding. If there is anything unreasonable in this phase of the case, it would appear to be the contentions of counsel.

This brings us to the proposition raised by paragraph 7 of the motion for directed verdict, wherein it is asserted that, if there was a legal consideration for the promise sought to be enforced, then such consideration would constitute the transaction a lottery. To sustain such contention would require us to overrule State v. Hundling, supra, and to overrule such contention requires a differentiating of that case from this case. We think that the two questions are different and may be logically distinguished.

In the Hundling case, we point out that the source of the evil which attends a lottery is that it arouses the gambling

spirit and leads people to hazard their substance on a mere chance. Accordingly, it is vitally necessary to constitute a lottery that one who has the chance to win the prize must pay something of value for that chance. The value of the consideration, from a monetary standpoint, is the essence of the crime. However, in a civil action to enforce the promise to pay a prize, the monetary value of the consideration is in no wise controlling. It is only necessary that the act done be that which the promisor specified. The sufficiency of the consideration lies wholly within the discretion of the one who offers to pay the prize.

"* * * it matters not how insignificant the benefit may apparently be to the promisor, or how slight the inconvenience or damage appear to be to the promisee, provided it be susceptible of legal estimation." Blake v. Blake, supra.

Accordingly, it is entirely possible that the act, specified by the promisor as being sufficient in his discretion to constitute consideration for and acceptance of his promise, might have no monetary value and yet constitute a legal consideration for the promise. Under such circumstances, the arrangement is not a lottery. The promoter of the scheme cannot be prosecuted criminally. But, if the act specified is done, the unilateral contract is supported by a consideration, and, having been performed by the party doing the act, can be enforced against the party making the promise. We hold that such is the situation here. There is no merit in grounds 1, 3 and 7 of the motion for directed verdict.

III. Appellant's second assignment of error challenges paragraph 2 of the motion for directed verdict, which asserted that the evidence was insufficient to establish that Alice Kafer was employed by, or authorized by defendants to announce the winner of the drawing, and that defendants were not bound by her statements. The answer admitted that Parkinson was manager of the theatre. As manager of the theatre, he asserted that he had a lady hired to call out the name outside the theatre. This assertion upon his part is binding upon the defendants. The evidence shows that the only person who called out the name other than Parkinson was Alice Kafer, and that she habitually announced the name that had been drawn on prior occasions. The evidence was sufficient to establish her agency and to make her announcement binding on defendants.

■ IV. Appellant's fifth assignment of error challenges paragraph 5 of the motion for directed verdict, which asserts that there was no evidence that either plaintiff or her husband claimed the purse within the time limit fixed by defendants. The evidence shows that, when the plaintiff claimed the prize, Parkinson said:

"I am sorry, but it was your husband's name that was called, where is your husband?"

When her husband came, he said to him:

"You are too late, just one second too late."

Obviously, under Parkinson's statement, plaintiff claimed the prize in time. If her husband was the one entitled to it, the delay on his part was due to the defendants' act in permitting their agent, Alice Kafer, to announce the wrong name outside the theatre. Under such circumstances, defendants are estopped to claim the advantage of the one-second delay. The basis for such estoppel was pleaded in the petition. It must be enforced against defendants.

■ V. Appellant's sixth assignment of error challenges paragraph 6 of the motion for directed verdict, which asserted that no relevant, competent, or material proof tended to establish that the name of either the plaintiff or her husband was drawn. Plaintiff's name was announced by one agent, her husband's name by another agent, both of whom were in a position to bind the defendants. There is no merit in this ground of the motion.

VI. Appellant's fourth assignment of error attacks paragraph 4 of the motion for directed verdict, which is a blanket statement that under the evidence it would be the duty of the court to set aside a verdict for the plaintiff. The disposition of the other propositions herein demonstrates that there is no merit in this ground of the motion.

All of appellant's assignments of error are well grounded. No ground of the motion for directed verdict was sufficient to warrant a sustaining of the motion. The court's ruling was erroneous. The judgment entered pursuant thereto must be and it is reversed.—Reversed.

The CHIEF JUSTICE and all JUSTICES concur.